# ELDRED VS. LEAHY.

**LANDLORD AND TENANT.** (1, 2) *Covenant for quiet enjoyment implied in lease.* (3, 4) *Counterclaim and defense in action for rent, for violation of such covenant.* (5) *Answer to such defense or counterclaim.* (6, 7) **EVIDENCE:** *Validity of ordinance of city council to be proven, and not presumed, as between third parties.*

1. At common law, a covenant for quiet enjoyment is *implied* in every mutual contract for the leasing and demise of land, by whatever form of words made.

2. Under our statutes, such implied covenant for quiet enjoyment still exists in case of a demise of land for a term not exceeding three years. R. S., ch. 86, secs. 5, 35.

3. For any unnecessary and wrongful molestation of the tenant by the landlord, impairing his use and enjoyment of the demised premises, the tenant may *counterclaim* damages in an action against him for rent.

4. If the tenant is prevented by such act of the landlord from occupying some part of the premises, he may *defend* in part an action for the stipulated rent, on the ground of a partial failure of the consideration.

5. Where the landlord shows that he was required by a *valid* order and ordinance of the municipal authorities to perform the acts complained of by the tenant (in this case filling up the street and sidewalk adjoining the demised premises), *it seems* that this would be a sufficient answer to such a defense or counterclaim.

6. But where the legal power of the municipal authorities to make such order or ordinance depended on certain preliminary proceedings being had (such as the presentation of a certain petition), the landlord, setting up such order and ordinance, must prove the existence of such preliminary proceedings; and their existence will not be *presumed* upon proof of the making of the order and ordinance.

7. As to the validity of their official acts, the common councils of cities, and similar municipal bodies, stand upon the same footing as courts of a *limited* and *special* jurisdiction. Jurisdictional facts must be proven, and will not be presumed.

APPEAL from the Circuit Court for *Milwaukee* County.

The plaintiff leased to the defendant certain premises situate at the corner of Main (or Broadway) and Huron streets in the city of Milwaukee, which were used by defendant in his bus-

iness as a gas fitter and manufacturer of steam heating appara-
tus. This action was brought upon the lease, to recover two
quarters' rent, falling due, respectively, on the first days of
August and November, 1871. The defense was, that at the
time of the execution of the lease there was in the demised
premises a basement story, which was a material part of the
premises for defendant's business, and which was sufficiently
lighted by windows and accessible by a door on Broadway;
that about the 1st of July, 1871, plaintiff, against defendant's
objection, and without necessity, so constructed a sidewalk on
Broadway, along and in front of the demised premises, as to
prevent said basement from being sufficiently lighted by said
windows, and prevent the convenient use of said door, and ren-
der the premises inconvenient and insufficient for defendant in
his said business ; so that, as soon thereafter as possible, to wit,
October 1, 1871, defendant vacated the premises and surren-
dered them to the plaintiff. It is further alleged that plaintiff
might have so constructed said sidewalk as to leave an area
therein, extending along the front of the building on said
street, sufficient for the windows to have lighted the basement
sufficiently, and sufficient to permit the convenient use of said
door; but that, though often requested to so construct the side-
walk, he wholly neglected to do so, to defendant's damage in
a sum greater than the rent claimed.

The same facts are also set up as ground of a counterclaim
for a much larger sum than the rent claimed.

There was a reply in denial, which alleges, among other
things, that on or about August 1, 1871, the plaintiff, in obedi-
ence to an order of the common council of the city of Milwau-
kee, raising the grade of Broadway and the sidewalks thereof,
and in obedience to an order of the board of public works of
said city, requiring the grade of said street and sidewalks to be
raised in conformity to said ordinance, caused said street and
sidewalk in front of said premises to be raised and graded to
the grade established by said ordinance, as by law he was re-

quired to do; and that he caused said work to be carefully done, in a good and workmanlike manner, and did not obstruct the light of said basement, or otherwise in any manner interfere with the use and enjoyment of said premises by defendant; and except as thus admitted, the allegations of the answer are denied.

A part of the evidence offered by plaintiff at the trial, and received against defendant's objection, consisted of (1) an ordinance of the common council of Milwaukee, passed September 20, 1869, determining the grade of Main and Huron streets; (2) a resolution of the council, passed June 19, 1871, instructing the board of public works to cause work to be done on Broadway (otherwise called Main street) within certain specified limits (including the part thereof on which the plaintiff's premises abut), "as petitioned for and recommended by said board to the council," etc.; and (3) an order or notice of the board of public works, dated June 21, 1871, notifying the owners of certain described lots (including that here in question), in accordance with the above mentioned resolution of the common council, that they were required to do or cause to be done the work stated in such resolution, within the time mentioned, or the work would be let by contract in accordance with law, etc.    Plaintiff also testified that he did the work under said ordinance and order, and in accordance with the requirements thereof; and gave evidence tending to show that he did it with due care, etc.

The rest of the evidence need not be stated.

The following instructions, among others, were asked by defendant, and were refused : 1. The act of the plaintiff in building the sidewalk so as to obstruct the light of the basement of the demised premises, if the jury find the fact to be so, was not justified as regarded the defendant, by any proceedings the city could take.   2. The proceedings on the part of the city as proved by the plaintiff, are all invalid for want of a petition to do the work under sec. 23, ch. 401, Local Laws of 1869.

The court instructed the jury that if the landlord permits or causes acts to be done which render the premises untenantable, it is the duty of the tenant to surrender the possession of the premises; that it appears by the evidence in this case that there was an ordinance establishing a grade in the street which bounded this property, and an ordinance requiring the street and sidewalk to be graded in accordance with that established grade; that plaintiff's act, therefore, was not a voluntary act, but done under the direction of a superior power; and that, if plaintiff caused the work to be done in a reasonable and proper manner, so as not to interfere with the rights and privileges of the tenant in possession, farther than was necessary, then he was entitled to recover the rent under the lease.

Verdict and judgment for plaintiff; and defendant appealed.

*E. G. Ryan*, for appellant, contended, among other things, that the question whether the acts of the plaintiff in the construction of a sidewalk were voluntary or otherwise, was a question of fact, and should not have been taken from the jury; that there was no sufficient proof in this case that the acts were not voluntary; that the board of public works had no legal authority to order the work to be done without a resolution of the common council, and the council had no authority to order it done without a petition of resident owners (P. & L. Laws of 1869, ch. 401, sec. 9; P. & L. Laws of 1870, ch. 401, sec. 3); that the petition is jurisdictional; and that there is no presumption that a public officer, having a limited and special authority, dependent on a jurisdictional fact, had jurisdiction to act, until the existence of such jurisdictional fact is shown. Counsel also contended that where a tenant's enjoyment of the premises is interrupted by acts of the landlord, and he is partially evicted, he may either (1) terminate the demise, and surrender the possession; or (2) have the rent apportioned between what he is evicted from, or disturbed in, and what he continues to enjoy; or (3) insist upon a suspension of the rent, remaining in possession. *Peck v. Hiler*, 24 Barb., 178, and the cases there

digested in the briefs and opinions; *Manville v. Gay,* 1 Wis., 250.

*Jenkins & Elliott,* for respondent:

1. The raising of the sidewalk was not a voluntary act, being done under compulsion of law. *Pearce v. Milwaukee,* 18 Wis., 428.  2. It is presumed that public officers act according to law, until the contrary is shown.  The plaintiff, having been ordered to do the work by the proper authorities, was justified in conforming to the order, and was not obliged to go behind it, to ascertain whether all prerequisites had been complied with. The resolution of the common council recites that a petition had been presented, and it will be intended that the proceedings were regular. Broom's Leg. Max., 729.  3. The act of the plaintiff in executing the grade did not amount to an eviction, so as to work a suspension of rent.  Taylor's L. & T., §§ 388, 399; *Palmer v. Wetmore,* 2 Sandf., 316; *Manville v. Gay,* 1 Wis., 250; *Myers v. Gemmel,* 10 Barb., 537; *Ogilvie v. Hull,* 5 Hill, 52

DIXON, C. J.   It is a point respecting which counsel seem not to differ, that for any unnecessary and wrongful disturbance and molestation of the tenant by his landlord, operating to interrupt, impair or prevent the full and free use and enjoyment of the leasehold premises by the tenant, the tenant may recoup the damages so caused to and sustained by him, or have the same deducted or allowed by way of counterclaim, in an action brought against him by the landlord to recover the rents.   This seems to be a point not seriously controverted between counsel, that if the landlord voluntarily creates a nuisance at or near the demised premises, or voluntarily renders them untenantable or less fit and useful for the purposes of the tenant, after the commencement of the lease, the tenant, still retaining the possession, may have his remedy against the landlord by way of reducing the rents, or even of defeating them altogether, when the landlord sues to enforce payment of them.

We are not informed by the printed case before us, how long the lease in question was to run, or whether it contained any express covenant for the quiet enjoyment of the lessee or not, but if not, then a covenant of that kind was implied in case the term did not exceed three years. R. S., ch. 86, secs. 5, 35. It is well settled at common law, that a covenant for quiet enjoyment is implied in every mutual contract for the leasing and demise of land, by whatever form of words the agreement is made; and for the breach of such covenant occasioned through any fault of the lessor, the lessee has his remedy against the lessor for whatever damages he may have sustained. *Mack v. Patchin*, 42 N. Y., 167, 171, 174, and authorities cited. And the same rule has been applied with respect to damages sustained by the covenantee in a deed, when such damages were caused by the wrongful acts or misconduct of the covenantor, in breach of the covenant for quiet enjoyment contained in the deed. *Akerly v. Vilas*, 23 Wis., 207.

And in the early case in this court, *Manville v. Gay*, 1 Wis., 250, 257, the chief justice said: "When the defendant has been prevented from occupying the demised premises, he is not obliged to pay any rent, because the consideration for the agreement to pay the rent has wholly failed. So, for the same reason, when the tenant has been evicted from the entire premises, he is not obliged to pay rent after the eviction. And after an eviction from a *portion* of the premises demised, he would be liable only to pay rent *for that portion which he continued to occupy;* and it would seem, for the same reason, that the consideration for his agreement to pay the rent has *in part failed.*

It would seem immaterial, therefore, under the system of pleading and practice now prevailing, upon which ground the defense, as in this case, shall be said to rest, whether of failure of the consideration, in whole or in part, for which the covenant to pay rent was made; or, of counterclaim under the code to recover damages caused by the same wrongful acts or omissions of the landlord. The acts complained of being a·breach

of the covenant for quiet enjoyment, express or implied, by the lessor, there can be no doubt, we think, the damages resulting to the lessee constitute the proper subject of counterclaim in an action brought against him for the rent. Such damages are, within the definition of the statute, a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, and connected with the subject of the action.

Having determined that the damages sustained by the defendant were properly pleaded in answer, and constituted a valid defense or counterclaim, in whole or in part, to the demand of the plaintiff in this action, provided the acts complained of and from which the damages arose were voluntarily done by the plaintiff, the next point of inquiry is as to the character of those acts, or whether the same were voluntary or involuntary on the part of the plaintiff. The plaintiff set up in reply, and endeavored to establish upon the trial, that he acted involuntarily in doing them, and proceeded only in obedience to the mandate and superior power and force of the law, which compelled him, whether he would or not, to grade the street and raise up the sidewalk in front of the building and premises in manner as he did. He excused or attempted to excuse himself on the ground of duress or compulsion under authority of law, by which he was obliged to do the acts, and from which there was no escape,— no remedy or means at hand or within his control by which he could avoid the performance of them. He set up an ordinance of the common council of the city of Milwaukee, raising the grade of the street and of the sidewalk, and another ordinance instructing the board of public works of the city to cause the work to be done, and an order of the board of public works requiring the owner or agent of the owner of the premises demised, to do or cause to be done the work as therein stated. By these must be understood, of course, valid ordinances and a valid order. The sufficiency of the excuse thus stated and relied upon, if established in evidence, is not ques-

tioned.  The only point which will be further considered on this appeal is as to the nature and sufficiency of the evidence which was introduced by the plaintiff, and upon which he depended to show that it was obligatory in law upon him to raise the grade of the street and of the sidewalk as the same was done, or, in other words, to show that he acted involuntarily in doing the work.

The only evidence introduced by the plaintiff were the ordinances and the order themselves.  The act amendatory of the act establishing the board of public works for the city of Milwaukee (ch. 401, P. & L. Laws of 1870, sec. 3), under which the work in question is alleged to have been done, provides that no work in the grading or improvement of any street, alley or sidewalk, which shall be chargeable to the lots or parcels of land fronting or abutting on the same, except repairs, shall be ordered without a petition therefor being first presented to the common council, signed by the residents of the ward or wards wherein such contemplated improvement is to be made, owning a majority of the feet in front of all the lots fronting upon such improvements, owned by residents of such ward or wards.  Further particular provision is also made for cases where the majority of feet in front of all lots shall be owned by nonresidents of such ward or wards, and prescribing how and by whom the petition shall then be signed.  In no case, however, can any work of the kind be ordered without a petition signed and presented to the common council by the owners of lots.

No evidence was introduced or proof made on the trial, of the signing or presentation of a petition for the ordering of the work or making of the improvement in question on the street in front of the demised premises.

In support of the proofs as they are or were made, counsel for the plaintiff argues that the signing and presentation of the requisite petition must be presumed.  The ordinances and order being shown, counsel rely on the presumption in favor of the correctness of official action, and say that the signing and pre-

sentation of the proper petition must be presumed, else the ordinances would not have been passed or the order made. This is a mistaken view of the law, we think, as applicable to such a case as this. It may be stated as a proposition, generally, if not universally, true, that, whenever private rights are to be injuriously affected or taken away by the proceedings of these special and inferior jurisdictions or bodies politic, their power and authority to act and to proceed in the premises must be clearly and positively shown. This principle is fundamental and almost axiomatic in the law, and seldom, if ever, departed from in such cases. The tribunal being inferior and limited in its powers, no presumption of the existence of jurisdictional facts necessary to give validity to its acts, will be indulged. Their validity must be shown in order to divest private rights or defeat remedies which would otherwise have remained. The signing and presentation of the petition in this case was a jurisdictional fact, without which neither the common council nor the board of public works had authority to act; and that fact cannot be supplied by presumption. Notwithstanding the ordinance and order, there may have been no petition or no sufficient and proper one; and if so, the ordinance and order were clearly void. It was holden by this court in *Hayes v. The City of Appleton*, 24 Wis., 544, that for all the purposes of jurisdiction, where individual rights are to be affected or their exercise suspended, the common council of a city is like a court of inferior and limited jurisdiction; and the facts showing that it had power to pass the ordinance must be made to appear. Such we believe to be clearly the rule of law here; and for this defect in the proofs made and offered by the plaintiff, the judgment appealed from must be reversed, and a new trial awarded.

*By the Court.*—It is so ordered.