# CHICAGO, M. & ST. P. RY. Co. *v.* CITY OF SABULA and another.

*(Circuit Court, N. D. Iowa, E. D.* January 3, 1884.)

RAILROAD BRIDGE—TAXATION—LAWS OF IOWA.

The constitution of Iowa requires the property of all corporations for pecuniary profit to be taxed in the same way as that of individuals. In 1872 the legislature passed an act providing that railroad property within the state should be assessed for taxation by a special board appointed by the state, and not by the local authorities. This statute was held by the courts to be constitutional, on the ground that it applied to all railroad property whether owned by corporations or by individuals. Section 10 of the act of 1872 declared that no provisions of the act should apply to any railroad bridge across the Mississippi or Missouri river, but that such bridges should be taxed as individual property. At the time the act was passed none of the bridges over those rivers were owned by railroad companies, but the companies paid rent or toll for the use of them. In 1880 the Chicago, Milwaukee & St. Paul Railroad built a bridge of its own across the Mississippi at Sabula. *Held,* that the nature of the property and not the ownership determined whether it fell within section 10 of the act, and that the bridge was therefore subject to be taxed by the local taxing district.

Bill in Equity. Motion for temporary injunction.

*W. J. Knight* and *J. W. Cary,* for complainant.

*Fouke & Lyon, W. C. Gregory,* and *J. Hilsinger,* for defendants.

SHIRAS, J. The bill in this cause sets forth that the complainant is a corporation organized under the laws of the state of Wisconsin, and is the owner and lessee of about 5,000 miles of railroad in the states of Wisconsin, Illinois, and Iowa; that, among others, it operates a line running from Chicago, Illinois, to Council Bluffs, Iowa, which crosses the Mississippi river at the town of Sabula, by means of a bridge constructed by complainant under the authority of the act of congress, approved April 1, 1872, the said bridge being used solely for the passage of the trains of complainant, and being owned solely by complainant, the same as other portions of its track. The bill further alleges that in the years 1881, 1882, and 1883, the general manager of complainant made a statement of the number of miles of railroad operated by complainant in the state of Iowa, with the number of cars, and the amount of earnings, as required by the statute of Iowa, and furnished the same to the executive council, which statement included the length of so much of said railroad bridge at Sabula, Iowa, as is within the state of Iowa, and that the executive council, as required by law, assessed the total valuation of complainant's property, including so much of said bridge as is within the state of Iowa, and apportioned the same over the entire road of complainant, in accordance with the requirements of the statutes of Iowa, regulating the assessment and taxation of railroad property. The bill further charges that the town of Sabula, and county of Jackson, have each assessed the bridge in question and levied taxes thereon for the years 1881, 1882, and 1883, and are threatening to enforce the payment

thereof, by seizure and sale of complainant's property, to prevent which the court is asked to issue a temporary injunction.

The question presented is, therefore, whether, for the purposes of taxation, the bridge, owned and used by complainant across the Misissippi river at Sabula, Iowa, is to be deemed and taken to be a component part of the entire line of road owned by complainant, the same as the bridges across the Des Moines, the Iowa, and other streams within the state of Iowa, and, as such, to be valued and assessed by the executive council of the state, or whether it is to be deemed and taken to be a railway bridge within the meaning of section 808 of the Code of Iowa, and as such to be assessed and taxed the same as the property of individuals in the same county; that is, by the local assessors and the board of equalization.   Previous to the year 1872, the property of railroads in Iowa was taxed through the gross earnings of the companies, 1 per cent. being levied upon such earnings, one-half of which tax was paid to the state, and the other half to the respective counties through which the roads were operated.   In 1872 an act was passed by the legislature, providing for the assessment to be made by the census board or executive council.   The act required the officers of each railroad company to furnish to the census board a statement showing the whole number of miles operated by the company within the state, and within each county in the state, with a detailed statement of the number of engines, cars, and other property used in operating the railroad within the state, and of the gross earnings of the entire road and of so much thereof as is situated within the state.

Section 1 of the act declares it to be the duty of the census board, on the first Monday of March in each year, "to assess all the property of each railroad company in this state excepting the lands, lots, and other real estate of a railroad company not used in the operation of their respective roads."

In section 3, it is provided that "the assessment shall be made upon the entire road within the state, and shall include the right of way, road-bed, bridges, culverts, rolling stock, depots, station grounds, shops, buildings, gravel-beds, and all other property, real and personal, exclusively used in the operation of said railroad."

Having ascertained the total valuation, the value per mile is ascertained by dividing the total value by the number of miles, and this valuation, with the number of miles situated in each county, is transmitted to the board of supervisors of each county, by whom the length of the track, and the assessed value of the same within each city, town, township, and lesser taxing district within the county is determined.

By section 10 of the act it is declared that "no provision of this act shall be held to apply to any railroad bridge across the Mississippi or Missouri rivers, but such bridges shall be assessed and taxed on the same basis as the property of individuals."

When this act of 1872 was adopted there were several bridges across the Mississippi and Missouri rivers, but these were, save the Rock Island bridge, which was owned by the United States, owned by bridge companies, by whom the bridges were constructed, and the use thereof was leased or otherwise contracted to the railroad companies, who paid a rental or toll for crossing the same.   In 1880 the complainant constructed its bridge over the Mississippi river at Sabula, for the purpose of making a continuous line of road from Milwaukee and Chicago to Council Bluffs.   The bridge is used only for the passage of the cars of the complainant's trains, and no rental or toll is paid for crossing the same by any shipper of freight or passenger upon complainant's road.   In other words, this bridge forms part of complainant's line of railway, the same as any of the other bridges spanning the streams, great or small, that are crossed in going from Sabula, on the Mississippi, to Council Bluffs, on the Missouri.

On part of complainant it is claimed that as this bridge forms part of its continuous line of road, it comes within the enumeration of the property to be taxed by the census board, as found in section 3 of the act of 1872, and that section 10 does not take it out of this enumeration, that section being intended to cover the bridges across the Mississippi and Missouri rivers which are owned by bridge companies, and for the use of which the railroad companies pay a rental or toll. On part of the defendants it is claimed that the provisions of section 10 must be held applicable to all bridges across the rivers named, which are used for railroad purposes in the crossing of trains over the same; that it is the use made thereof, and not the ownership, which makes the structure a railroad bridge within the meaning of this section.

In the case of *City of Dubuque* v. *C., D. & M. R. Co.* 47 Iowa, 196, the question of the constitutionality of this act of 1872 came before the supreme court of Iowa, it being claimed that the act was in contravention of section 2, art. 8, of the state constitution, which provides that "the property of all corporations for pecuniary profit shall be subject to taxation, the same as that of individuals."   The majority of the court held the act to be constitutional upon the theory that the mode of assessment and taxation provided in the act applied to all property of the character named, without reference to whether it was owned by a corporation, a partnership, or an individual. That the act does not provide a special manner of assessing the property of railroad companies as such, but rather of railroad property, and that such property would be properly taxable under its provisions, whether owned by an incorporated company, a partnership, or an individual.   In other words, the court holds that the general provisions of the act were intended to apply to all property used for railroad purposes, and not solely to property owned by railroad corporations, the use, and not the ownership, determining the question whether the act was applicable thereto.

Under this construction of the act it follows that, as a general rule, all property used in the operation of a railroad, no matter whether the same is owned by a corporation or individuals, is to be assessed by the census board in the mode pointed out in the act in question. Section 10 of the act, however, provides for an exception to the general rule thus laid down, by enacting that the provisions of the act shall not "apply to any railroad bridge across the Mississippi or Missouri river, but such bridges shall be assessed and taxed on the same basis as the property of individuals."

As already stated, the question at issue between the parties to these proceedings is whether this section shall be held to apply to all bridges used for railroad purposes, without regard to the ownership thereof, or shall be confined to bridges owned by bridge companies. In the latter case, the assessment of the bridge at Sabula would be made solely by the census board; but in the former case, the bridge would be assessed and taxed the same as any other structure erected in the town of Sabula. If it be true that the general provisions of the act of 1872 are intended to apply to property used in the business of railroading, without reference to the question of the same being owned by a corporation, partnership, or by individuals, then it would seem only consistent to hold that the same rule should be applied in construing section 10 of the act, and that therefore, when it is stated that "no provision of the act shall apply to any railroad bridge across the Mississippi and Missouri rivers," the meaning is that that particular species of railroad property is excepted from the operation of the act, without reference to whether it is owned by a railroad corporation, a company, or an individual. Within the meaning of this act, a railroad bridge is a structure used for the purpose of the passage of locomotives and cars over the same, by means of rails laid along the structure. If the structure is used for that purpose, it is a railroad bridge, no matter by whom it was built and is owned.

Under this construction of the act all bridges over the Mississippi and Missouri rivers used for the passage of railway trains will be assessed and taxed under one and the same statute. If it be held, however, that a bridge used solely for the passage of railway trains is to be taxed by the census board, if owned by a railway company, but if owned by an individual, is to be assessed and taxed by the local assessors, then we would have different modes of assessment and taxation, applied to similar property, used for a like purpose, and differing only in the ownership. It can hardly be supposed that the legislature intended to enact such a law, in view of the constitutional provision already quoted. As an illustration, take the bridge over the Mississippi river at Dubuque. It is owned by a bridge company, but is used solely for the passage of railway trains over the same. It is always spoken of as a railroad bridge, and is assessed and taxed, not by the census board, but by the local assessors, the same as other realty in the city and county of Dubuque. If the Illinois Central Rail-

road Company should purchase this bridge from its present owners, and continue the running of their trains over the same, it would then constitute a part of the main line of the company, connecting Cairo and Chicago with Sioux City, just as the Sabula bridge constitutes part of the line of the Chicago, Milwaukee & St. Paul Railroad Company, and, according to the contention of complainant, a change in the ownership of the bridge in the supposed case would be followed by a change in the mode of assessment and taxation of the bridge, although the structure and the use made thereof remains unchanged.

It is urged in argument that there is a difference between a bridge owned by a company, such as the one at Dubuque, and one owned by a railway company, as is the one at Sabula, in that a toll is charged by the bridge company and paid by the railway company for each car and passenger that passes over the bridge; whereas, in the latter case, the railway company treats the bridge as part of its continuous line, and makes no special charge for carrying freight and passengers over the same, in distinction from any other part of its line. This difference, however, so far as it affects the question under consideration, is more apparent than real. In both cases the companies use the bridges for the same purpose. In the one case the railway company meets the cost of transporting its trains over the river by paying for the use of the bridge, while in the other, the company meets the cost by paying for the erection of the bridge, and the current expenses of maintaining it. It is nevertheless true that the structures and the uses to which they are put are the same in both instances, and the mode of their construction, and the use to which they are put, show them to be alike railroad bridges, and no good reason is perceived why the modes of assessment and taxation should be varied by reason of a difference in the ownership.

The act of 1872, as construed by the supreme court of Iowa, is intended to provide for the taxation of property used in the operations of railroading, without regard to its ownership by a corporation, a partnership, or individuals. If there were no exceptions in the act, all railroad bridges crossing the Mississippi and Missouri rivers, being structures used in the operation of railways, would fall within the provisions of the act, and in that case would be assessable by the census board, and in no other manner. But by section 10 of the act, one kind of property used in the operation of railways is specially excepted, to-wit, all railway bridges across the Mississippi and Missouri rivers, it being declared that "such bridges shall be assessed and taxed on the same basis as the property of individuals." Under this section the census board have no right or authority to assess any railroad bridges spanning the rivers named, because the first clause of the section expressly declares that no provision of the act shall be held applicable to such bridges, and it is only by virtue of the provisions of this act that the census board have the right to assess any railroad property for taxation. The first clause, therefore, of section

10 negatives the claim that railroad bridges over the Mississippi and Missouri rivers are assessable by the census board, and the latter clause of the section expressly declares that these bridges shall be assessed and taxed on the same basis as the property of individuals, by which is meant that these bridges shall be assessed in the same mode as is pursued in regard to other property situated in the same taxing district, or, in other words, these bridges are to be assessed and taxed through the agency of the local assessors.

In considering the construction to be given to the act of 1872, I have viewed it in the form in which it was passed by the legislature, and not as it is now found incorporated in the Code of 1873. An examination of the Code shows that section 1 of the act of 1872 forms section 1317 of the Code, and sections 2, 3, 4, 5, 6, and 11 of the act of 1872 are condensed into sections 1318, 1319, 1320, 1321, and 1322 of the Code. Sections 8 and 10 of the act of 1872 are found incorporated together as section 808 of the Code. The changes thus made in the language used, and in the relative positions of these sections, do not change the legal effect thereof, so far as the question under consideration is concerned. These sections, 808 and 1318 to 1322, inclusive, deal with the same subject, and are therefore to be construed together. While section 1317 declares that the executive council shall assess all the property of each railway corporation in the state, "excepting the lands, lots, and other real estate belonging thereto not used in the operations of any railway," yet, section 808 declares that "lands, lots, and other real estate belonging to any railway company not exclusively used in the operation of the several roads, and all railway bridges across the Mississippi and Missouri rivers, shall be subject to taxation on the same basis as the property of individuals in the several counties where situated." Being *in pari materia*, the two sections must be construed together; and it follows that the general declaration in section 1317, that all the property of each railway corporation is to be assessed by the executive council, must be held to mean all property not excepted in some other section of the statutes dealing with the same subject-matter.

It is a familiar rule of construction that general statements or provisions in statutes may be restricted or qualified by special clauses found therein. Therefore, when we find that section 1317 declares, generally, that all the property of railway companies used in the operation of their roads is to be taxed by the executive council, and that section 808 provides for the taxation of lands, lots, and other property not used in the operation of the roads, and of railroad bridges, by the local assessors, we must hold that the special exceptions named in section 808 qualifies and restricts the general language used in section 1317. By this rule both sections are harmonized, and neither abrogates the other. That this construction effectuates the true intent of the legislature, is shown by a reference to the act of 1872, wherein, as already stated, we find the general de-

claration as now set forth in section 1317 of the Code, but with the proviso found in section 10, declaring that the provisions of the act should not apply to any railroad bridge across the Mississippi and Missouri rivers. To give this section the construction claimed for it on behalf of complainant would require the interpolation of the words, "unless owned by a railroad corporation," or the equivalent thereof, so as to make the section read, "that no provision of this act should be held to apply to any railroad bridge across the Mississippi or Missouri rivers, unless owned by a railroad corporation."

It is argued that this must have been the intent of the legislature, in effect, because, when the act of 1872 was passed there were no bridges across these rivers that were owned by the railway companies, and hence that the exception contained in section 10 could not have been intended to apply to such bridges when they were afterwards built. The act of 1872 was prospective in its operation. It was intended to provide a mode for the taxation of railway property in the future, and was intended to, and does apply to, all railways in the state, whether then built or not. While it may be true that in 1872 there were no railway bridges across the Mississippi or Missouri rivers owned by the railroad companies using the same, still it cannot be fairly claimed that the improbability of such bridges being built and owned by the railroad companies was so great that it must be presumed that the legislature did not contemplate such bridges being built, and therefore did not intend to include them within the general term of railroad bridges, as found in section 10 of the act of 1872.

It was certainly known to the legislature that railroad companies, both in Iowa and other states, were frequently in the habit of building and owning bridges across rivers of very considerable magnitude, and that there was no special reason why in the future some railway company might not build and own a bridge across the Mississippi. It was also undoubtedly known to the legislature, when the act of 1872 was passed, that congress had, in 1866, authorized the Chicago, Burlington & Quincy Railroad Company to construct and maintain a railroad bridge across the Mississippi river, connecting its lines in Illinois and Iowa, and in the same act had authorized the Winona & St. Peter Railroad Company to construct and maintain a railroad bridge across the Mississippi river at Winona, Minnesota, and that in 1870 had authorized the St. Joseph & Denver City Railroad Company to construct and maintain a railroad bridge across the Missouri river at St. Joseph, Missouri, and in 1871, had authorized the Louisiana & Missouri Railroad Company to construct and maintain a railroad bridge across the Mississippi river at Louisiana, Missouri, and in 1872, but a few days before the passage of the act of the legislature in question, had authorized the Western Union, and Sabula, Ackley & Dakota Railroad companies to construct and maintain a railroad bridge across the Mississippi at some point in Clinton or

Jackson counties, in Iowa,—the bridge in question at Sabula being afterwards built under the authority of this act of congress, by the present complainant, as the assignee of the rights of said Western Union, and Sabula, Ackley & Dakota companies.   Under these circumstances, the claim made in argument, that the legislature could not have contemplated the possibility of the construction of any railroad bridges across the Mississippi and Missouri rivers by a railroad company, and hence, did not intend the exception found in section 10 of the act of 1872 to apply to such bridges, cannot be sustained, in view of the broad terms used in that section.

If the views herein stated are correct, it follows that the executive council of the state have no authority to include the bridge at Sabula in the enumeration of the property owned by complainant to be assessed by such council.   Being a railroad bridge, it is to be assessed and taxed on the same basis and by the same modes that are applicable to other realty situated in the same taxing district; and, as a necessary consequence, it follows that the application for a temporary injunction must be overruled.

Recognizing the importance of the question presented in this case, I have given as much time to its investigation as was possible, since its submission, but its importance demands that it should not be left dependent upon the conclusions of a single judge reached upon an argument upon a motion for a temporary injunction, and it is the desire of the court that, upon the final hearing of the case upon its merits, the question may be presented to a full bench.