Jordan v. Indianapolis Water Co.

---

## JORDAN ET AL. *v.* THE INDIANAPOLIS WATER COMPANY.

[No. 19,904. Filed June 20, 1902. Rehearing denied October 28, 1902.]

LANDLORD AND TENANT.—*Lease.— Water Privilege.*—For a certain yearly rental a water company contracted with B to furnish water during certain months in the year, and when not needed for certain hydraulic purposes. B was to provide a trunk in the bank of the canal, with a stop-gate. The company did not agree to keep the canal in repair. It was further provided that B should not be liable for rent if the pond created by the water taken should be declared a nuisance, if any intervening owner interfered with the maintenance of the trunk across his land, or

if the water company was unable to furnish water. *Held,* that the contract was not a license, a mere unenforceable option to draw water, but a lease founded on good consideration, and that B was liable for rent if through her own fault she failed to take water. *pp. 338-344.*

CONTRACT.—*Mutuality.*—It is enough to give mutuality to a contract that is entire in its character, if there is a consideration on both sides for its performance. *pp. 344-346.*

LANDLORD AND TENANT. — *Lease.* — *Water Privilege.*— *Assignment.* — In a lease granting the privilege to draw water from a canal, a covenant to pay rent runs with the land, and an assignee of the lease is liable for the rent. *p. 346.*

TRIAL.—*Evidence.*—*Instruction.*—In an action on a contract, evidence from which abandonment might be inferred is no reason for instructing on that subject, when no such issue was raised by the pleadings. *p. 347.*

PLEADING.—*New Matter.* —*Supplemental Complaint.*—*Waiver.*—Where an amended complaint is filed which upon its face shows that it contains supplemental matter, the filing of a demurrer or an answer thereto will be held to be a waiver on the part of the defendant of an objection that the new matter set up should have been incorporated in a supplemental complaint. *pp. 348, 349.*

LANDLORD AND TENANT. —*Assignment of Lease.* — *Lessee's Liability for Rent.*—A lessor's consent to an assignment of a lease by the lessee does not relieve the lessee from an express covenant to pay rent. *pp. 350-353.*

From Marion Superior Court; *Vinson Carter,* Judge.

Action by the Indianapolis Water Company against Arthur Jordan and others. From a judgment for plaintiff, defendants appeal. Transferred from Appellate Court, under §1337j, subdivision 2, Burns 1901. *Affirmed.*

*R. W. McBride, C. S. Denny, S. N. Chambers, S. O. Pickens* and *C. W. Moores,* for appellants.

*Albert Baker* and *Edward Daniels,* for appellee.

GILLETT, J.—Appellee brought this action to recover four instalments of rent that it claimed were due it for the privilege of tapping a certain artificial waterway, known as the Indiana Central Canal, and drawing water therefrom sufficient to fill and maintain a certain pond during the ice gathering season.

It is averred in the amended complaint that appellee and appellant Cynthia Butsch executed a written contract, on

the 1st day of November, 1884, a copy of which is set out in the body of such complaint. The contract recites that the company, "in consideration of the rents, covenants, and agreements hereinafter mentioned," "hath demised and leased, and by these presents doth demise and lease" unto said Cynthia Butsch, for and during the term of five years from the date of the contract, "the right to draw sufficient water from the Indiana Central Canal" to fill and maintain her ice pond, that is particularly described, subject to certain specified conditions. These conditions are: That the water is only to be drawn during certain months of the year, through a trunk, of specified diameter, that she is to cause to be inserted in the bank of the canal; that she is to construct and maintain at the intake a stop-gate, and, except when drawing water for said pond, to keep the same securely closed and fastened; and that she is to keep the canal embankment secure against injury or damage consequent upon the construction of said trunk and gate. It is further provided in said contract that water shall not be drawn from the canal except when there is water therein not needed for certain hydraulic purposes. It is expressly provided by said agreement that the company does not engage or guarantee that there shall be any surplus water, and it is stipulated that it is not to be liable by reason of any non-repair of the canal or break therein, or for other causes of an insufficient supply of water. The contract then recites that said Cynthia Butsch covenants and agrees "to pay for the supply of water to be drawn by" her "from said canal, for the use of said ice pond, the sum of $1,000 per annum," payable semiannually, "during the continuance of this lease." It is then provided that if any intervening owner of property requires her to remove the trunk from the head of the mill-race, immediately east of the pond, or if the pond should be declared a nuisance by a court or other competent authority, then she is to be relieved from any further liability for water rent, and the

contract is to cease to be operative. In the event that there is no surplus water during the season when she would otherwise be authorized to draw the same, the contract provides that she is not to be held liable for the rent for that season; and, in case she is unable to get water for but a part of the ice gathering season, it is provided that the "rent shall be due and payable for the part of the season in which water is furnished in the proportion the time the water is furnished bears to the whole ice season, and no more." In conclusion, the contract provides that "this lease shall not be transferred or assigned without the consent of the" company "first had and obtained."

The complaint further alleged that on the 21st day of October, 1887, the parties to said agreement entered into a written contract for its extension, upon the same terms, until November 1, 1897. A copy of this agreement is also set out in the amended complaint. It is further alleged that on the 10th day of June, 1891, at the request of appellant Butsch, the appellee indorsed upon said extension agreement its consent to the assignment of her rights to appellants, Jordan and Caylor, with the provision that they were not to assign or sublet. It is then alleged that on the same day she executed to them an assignment of said original contract and extension, a copy of which assignment is set out, and that upon said day "under and by virtue of said assignment said Allen Caylor and Arthur Jordan entered into the possession and enjoyment of all of the rights of said Cynthia Butsch, secured by said original contract and extension agreement, and have since possessed and enjoyed the same," and that they thereafter made the payments accruing under said contract, up to and including that of September, 1894, aggregating $3,000; that during all of the ice seasons from November 1, 1894, to April 1, 1895, and from November 1, 1895, to April 1, 1896, appellee had in its canal, at the mouth of the inlet or trunk mentioned in said contract, surplus water, over and above all

that was required for said hydraulic uses, and sufficient to fill and keep filled said pond, and that if appellants, Jordan and Caylor, did not take said water during all of said seasons it was only because they did not see fit to open their said stop-gate so that the water might flow into their said pond; that the original contract and said extension agreement have at all times continued in full force, and that appellants, although often requested so to do by appellee, have neglected and refused to pay the instalments of rent due in June and September, 1895, and June and September, 1896, and that they are now indebted to appellee for said four instalments in the sum of $2,000. The averments of the amended complaint conclude with a general allegation of performance by appellee.

The appellants, Jordan and Caylor, filed a demurrer to the amended complaint. Their demurrer was overruled, and they filed answer in general denial. The appellant Cynthia Butsch filed a special answer, to which a demurrer was sustained, and she then filed answer by way of general denial. A trial resulted in a verdict and judgment against all of appellants. Further questions, that will be discussed during the course of this opinion, were presented by motions for a new trial.

The first objection to the instrument sued on is that it is lacking in mutuality; that it imposed no obligation upon the company, and that the appellant Butsch had a mere option to draw water from the canal, when there was a sufficient supply; and that therefore there was no obligation to pay for a season during which no water was drawn.

Courts are not justified in straining the provisions of contracts in order to uphold them, but the desire of the law to effectuate, rather than defeat, the agreements of parties is wise and just.

We will first consider the claim that the instrument imposed no obligation upon the company. The document is in form a lease, and in its application to the subject-

matter we perceive no reason why it should not so operate. In 1 Platt, Leases, 24, it is said: "The subjects of demise are various, and, generally speaking, comprehend incorporeal as well as corporeal hereditaments. Thus, not only land, but advowsons, corodies, estovers, ferries, fisheries, franchises, rights of common, rights of herbage, rights of way, tithes, tolls, and other things of a similar kind, may be leased for lives or years." "As to what property may be demised, it is a general rule that anything corporeal or incorporeal, lying in livery or in grant, may be the subject of a demise." Taylor, Land. and Ten. (8th ed.), §17. A grant is the method by the common law of transferring the property of incorporeal hereditaments, or such things whereof no livery can be had. 2 Blackstone's Comm., *317. It is doubtless true that there can be no interest in water, wholly disconnected from land, for "water is a movable, wandering thing, and must of necessity continue common by the law of nature." But there are too many cases in the books recognizing the propriety of contracting for water rights as an incident to the proprietorship of land, creating rights appurtenant or in gross, to leave it an open question whether such rights may be the subject of grant.

Except where created by reservation or exception, an easement always lies in grant, actual or presumptive; and, if the interest is of a more permanent character than a mere license, but is nevertheless limited to an interest for a less time than the grantor has in the premises, and a rent is reserved, we take it that the interest is of a leasehold character. *Morrill* v. *Mackman*, 24 Mich. 279, 9 Am. Rep. 124.

We think that the right that was here granted was more than a mere license, for the instrument purported to grant the right to appellant Butsch upon a sufficient consideration, as we will hereafter show, not only to receive a flow of water for a term of years, at certain seasons, and when the water was sufficiently high, but it also burdened the real estate of the appellee by a provision that she should have

the right to maintain a trunk in the bank of the canal, and
the right to maintain a stop-gate; and it impliedly gave
her such possession as was necessary to enable her to main-
tain the bank of the canal against injuries consequent upon
putting in the trunk and stop-gate, and to prevent third
persons from opening said gate.    In *Smith* v. *Simons,* 1
Root (Conn.) 318, 1 Am. Dec. 48, the facts were that one
Flint had executed a writing whereby, for the consideration
of £5, he had granted, to those under whom the defendant
in that action claimed, the liberty of flowing certain lands
for twelve years without restriction, and for eighty addi-
tional years during a certain season of each year.    The ques-
tion on appeal was as to whether the contract was a license
or a lease that should have been recorded.    The court dis-
posed of the whole case in these words: "It is a lease, and
without being recorded it is void as to purchasers."

It is not material that the right of possession of appel-
lant Butsch was a right that was limited to such incidental
possession as was necessary to enable her to enjoy and pro-
tect her incorporeal right.    As said by the court, speaking
by Cooley, J., in *Morrill* v. *Mackman,* 24 Mich. 279, 284, 9
Am. Rep. 124: "A tenancy does not necessarily imply a
right to complete and exclusive possession; it may, on the
other hand, be created with implied or express reservation
of a right to possession on the part of the landlord, for all
purposes not inconsistent with the privileges granted to the
tenant."

What is implied in an express contract is as much a
part of it as what is expressed.    Bishop, Contracts, §121;
*Hudson Canal Co.* v. *Pennsylvania Coal Co.,* 75 U. S. 276,
288, 19 L. Ed. 349.    "The law is a silent factor in every
contract."    *Long* v. *Straus,* 107 Ind. 94, 57 Am. Rep. 87;
*Foulks* v. *Falls,* 91 Ind. 315, 320.

If the instrument is a lease, and we conclude that it is,
it follows that there is in the lease an implied covenant for
quiet enjoyment granted by appellee.    In *Hoagland* v.

*New York, etc., R. Co.,* 111 Ind. 443, 446, it was said: "That a covenant for quiet enjoyment, and that the landlord agrees to do no such acts as will destroy the beneficial use of the leased premises, is implied in every mutual contract for leasing land, by whatever form of words the agreement is made, is now too well settled to be doubted or shaken. *Avery* v. *Dougherty,* 102 Ind. 443, 52 Am. Rep. 680; *Smith* v. *Dodds,* 35 Ind. 452; *Wade* v. *Halligan,* 16 Ill. 507; *Streeter* v. *Streeter,* 43 Ill. 155; *Mack* v. *Patchin,* 42 N. Y. 167, 1 Am. Rep. 506; *Maule* v. *Ashmead,* 20 Pa. St. 482; *Eldred* v. *Leahy,* 31 Wis. 546; Wood, Land. and Ten., 564."

It is now our duty to consider whether there was an obligation imposed by the contract upon appellant Butsch. Counsel for appellant say: "There is no promise to pay for anything except the water to be had. The agreement is 'to pay for the supply of water to be drawn by said party from said canal for the use of said ice pond.' There is no promise to pay for any rights or any supposed rights, but for water." It is, of course, provided in the contract that there is to be no liability for rent during a season when the water can not be supplied, and for a ratable deduction when water can not be furnished for the entire ice gathering season. We can not, however, assent to the claim that her liability for rent depended upon whether she exercised the privilege of drawing water from the canal. It will not do to "stick in the bark" upon particular language in the contract. The intent of the parties should be gathered from the four corners of the instrument. The granting part of the lease is expressed to be "the right to draw sufficient water from the Indiana Central Canal." The rent is payable in instalments for each season "during the continuance of this lease," and careful provision is made for the abating of the rent when water can not be furnished, or in the event that the pond is determined, by a court or other competent authority, to be a nuisance, or if an intervening

Jordan v. Indianapolis Water Co.

owner interferes with the maintenance of the trunk across his land. We can not think that the parties would have seen fit to guard so carefully the tenant's liability, in case the contemplated supply of water could not be had, if she was only required to pay in the event that she elected to draw water from the canal.

In *Black* v. *Woodrow*, 39 Md. 194, 215, it was said: "If the act to be done by the party binding himself can only be done upon a corresponding act being done or allowed by the other party, an obligation by the latter to do or allow to be done the act or things necessary for the completion of the contract will be necessarily implied," citing *Churchward* v. *The Queen*, 6 B. & S. 807; *Pordage* v. *Cole*, 1 Wms. Saund. 319. To the same effect, *McCartney* v. *Glassford*, 1 Wash. St. 579, 20 Pac. 423; *Lewis* v. *Atlas, etc., Ins. Co.*, 61 Mo. 534; *Minneapolis Mill Co.* v. *Goodnow*, 40 Minn. 497, 42 N. W. 356, 4 L. R. A. 202; *Mississippi, etc., Co.* v. *Robson*, 16 C. C. A. 400, 69 Fed. 773. We need not determine whether the doctrine stated is sufficient *per se*, under an instrument like the one in suit, to cause the court to imply an obligation upon the part of the tenant; but such doctrine, which is only another way of stating that the law inclines to a construction that will uphold, rather than to one that renders nugatory, the agreement of the parties, does clearly give added weight to those provisions of the instrument from which the agreement of appellant Butsch can be inferred. In our judgment, there was a covenant upon her part to pay rent for the privilege.

It was not necessary to the validity of the contract that the water company should bind itself that there should be water in the canal, although it did, as we think, impliedly obligate itself to permit the tenant to take all necessary surplus water that should remain after supplying others who had an antecedent claim upon it. The requirement that there must be mutuality in a contract does not mean that every duty imposed upon one of the parties to it must

be based on a correlative obligation to receive the performance of such duty, and discharge the burden that devolves upon him under the contract in case such duty is performed. It is enough to give mutuality to a contract that is entire in its character, if there is a consideration on both sides for its performance. *Cherry* v. *Smith,* 3 Humph. 19, 39 Am. Dec. 150. We know of no reason—there being mutual engagements in the lease—why it was not competent for the tenant to agree to pay for having the right to tap the canal in case there was a surplus of water not already devoted to other uses.

The next question is whether the covenant to pay rent runs with the grant, so as to render the assignees of the term liable for the rent while there continued to be a privity of estate between them and the landlord. It was held in *Wheelock* v. *Thayer,* 16 Pick. 68,—although the court in the course of the opinion intimated some doubt upon the subject,—that the covenant would not run with a grant of a privilege of drawing water from a pond, the court saying: "This covenant could not run with the land, for no land was granted, and to make a covenant run with the land, it is not sufficient that it is of and concerning land." Mr. Angell, in his work on watercourses (6th ed.), §264, note, says of this proposition: "This doctrine is clearly not supportable." In *Bally* v. *Wells,* 3 Wils. 25, decided in 1769, it was said: "When the covenant extends to a thing *in esse,* parcel of the demise, the thing to be done by force of the covenant is in a manner annexed and appurtenant to the thing demised, and shall run with the land, and shall bind the assignee, although he be not bound by express words."

Whatever may be the law as to other covenants, where the lessee does not attempt to bind his assignee, we think it is to be implied, as a matter of clear equity, that the assignee is bound for the rent so long as a privity of estate exists between him and the landlord. As expressed by Lord Chief Baron Gilbert in a somewhat different con-

nection, "whosoever has a right to the rent, ought to have all that security for the payment of it, which was taken upon the original security and creation of it." Gilbert, Rents, 143. And see 2 Sugden, Vendors, 582; *Van Rensselaer* v. *Read,* 26 N. Y. 558; American note to Spencer's Case, 1 Smith's Lead. Cas. (9th Am. ed.), 206. As said in *Carley* v. *Lewis,* 24 Ind. 23: "A covenant for the payment of rent, whether it be made by the grantee of lands in fee, reserving rent to the grantor, or by a lessee for a term, belongs to that class of covenants which are annexed to, and run with, the land. The land itself is the principal debtor, and the covenant to pay rent is the incident. It follows the land upon which it is chargeable into the hands of the assignee. *Van Rensselaer* v. *Bonesteel,* 24 Barb. 365; *Vyvyan* v. *Arthur,* 1 Barn. & Cr. (8 Eng. C. L.) 410." So, in *McDowell* v. *Hendrix,* 67 Ind. 513, 518, it was said: "The assignees of the lessee are liable to the lessor, his representatives or assigns, for the rent of the demised premises for and during the time such assignees hold said premises, according to the terms and covenants of the lease; 'for though there is no privity of contract, there is a privity of estate which creates a debt for the rent.'" To the same effect, see *Watson Coal, etc., Co.* v. *Casteel,* 73 Ind. 296.

In this case, as the complaint charged that the appellants, Jordan and Caylor, entered into the possession of the demised premises under the assignment, and have since possessed and enjoyed the same, we think that under the averments of the complaint, they are liable for the rent that accrued during the period sued for.

Because there may have been evidence that might have justified the inference that the contract was abandoned, did not afford a reason why the court should have instructed upon that subject, there having been no affirmative pleading tendering an issue of abandonment. *Mabin* v. *Webster,*

129 Ind. 430, 28 Am. St. 199; *Crum* v. *Yundt,* 12 Ind. App. 308.

Objection is made that the amount of the recovery is too large, in that it included two instalments of rent that fell due after the action was commenced, and before the trial. Appellee, without objection, filed a so-called amended complaint during the trial that distinctly counted upon all of the instalments of rent then due; and appellants, Jordan and Caylor, first demurred thereto, and then framed an issue of fact thereon, while appellant Butsch at once filed answer. No objection was made to the course pursued until evidence was offered as to the last two instalments of rent. The question now presented is whether the objection is available. There can be no doubt as to the general doctrine that an amended complaint, except where some matter as to the running of the statute of limitations is involved, is *prima facie* presumed to speak as of the date of the commencement of the action. But here is an amended complaint that shows on its face that it has brought in supplemental matter, and it is a case, too, where the right to file a supplemental complaint is so obvious that the court, on application, could scarcely have refused leave to file it without an abuse of discretion, except, perhaps, because the application may not have been timely; and yet the appellants proceed to frame an issue upon it, instead of objecting to the filing of it, or moving to reject it upon its being filed. The court, by permitting the filing of an amended complaint that showed on its face that it contained supplemental matter, impliedly gave its permission so to do. The matter properly belonged in the case, and the appellants file answer. It must be that at some stage of the case the right to object to the somewhat anomalous procedure that the record shows was pursued in this case must be held to be waived, and we think that that time must be held to be as soon as the time had gone by when

appellants could have directly drawn the matter in question by moving to reject the pleading.

In interpreting the provision of our code relative to the filing of supplemental pleadings, we are authorized to look to the practice in chancery before the adoption of the code. *Kimble* v. *Seal,* 92 Ind. 276; *Barker* v. *Prizer,* 150 Ind. 4; 21 Ency. Pl. & Pr., 7. In *York* v. *Stapleton,* 2 Atk. 136, it was said by the Lord Chancellor: "The plaintiff could not properly amend his original bill, by filing new matter which has arisen since the original bill, but ought to have brought a supplemental bill; but then the defendant should have taken the advantage of this defect in form, by a demurrer, and it is too late to make the objection after they have answered." In 21 Ency. Pl. & Pr., 15, it is said: "It is well settled that where a party fails to note the distinction between an amendment and a supplemental pleading, and improperly resorts to one instead of the other, his adversary will be deemed to have waived the objection if without seasonably making any objection he proceeds in the cause as if the proper pleading had been filed." To the same effect, see *Seattle, etc., R. Co.* v. *Union Trust Co.,* 24 C. C. A. 512, 79 Fed. 179; Foster, Fed. Pr. (3d ed.) §165. See, also, *Farrington* v. *Hawkins,* 24 Ind. 253. Although Mr. Justice Story, in his work on Equity Pleadings (9th ed.), does not deal with the precise proposition that is now before us, yet, at §528 of that work, he clearly recognizes the doctrine, as the objection is purely one of form. He says: "Defects, for want of form, must ordinarily be taken advantage of by demurrer, assigning the defect of form as a special cause; for, generally the court will not listen to such objections at the hearing, if the case stated is such that the court can properly proceed to a decree." As our practice does not recognize the right to file a special demurrer for want of form, we regard the filing of a general demurrer, or the filing of an answer as to the merits, as a waiver of the objection that the new matter

was not incorporated in a supplemental pleading filed by leave of court.

But one question remains, and that is as to the liability of appellant Butsch after the assignment of the lease to her co-appellants. The general rule is that the assignment of a lease by a tenant does not relieve him from his express covenant to pay the rent, although the landlord may accept a part of the rent from the assignee. *Grommes* v. *St. Paul Trust Co.,* 147 Ill. 634, 35 N. E. 820, 37 Am. St. 248; *Harris* v. *Heackman,* 62 Iowa 411, 17 N. W. 592; *Hunt* v. *Gardner,* 39 N. J. L. 530; *Drake* v. *Lacoe,* 157 Pa. St. 17, 27 Atl. 538; *Port* v. *Jackson,* 17 Johns. 239; *Gerken* v. *Smith,* 11 N. Y. Supp. 685; *Ranger* v. *Bacon,* 22 N. Y. Supp. 551; *Bonetti* v. *Treat,* 91 Cal. 223, 27 Pac. 612, 14 L. R. A. 151; *Smith* v. *Harrison,* 42 Ohio St. 180; and see *Edmonds* v. *Mounsey,* 15 Ind. App. 399.

The general doctrine upon this subject was clearly stated in *Sutliff* v. *Atwood,* 15 Ohio St. 186, 194, where it was said: "There are two sorts of obligations by which tenants are liable to the lessor, viz.: those which arise from express agreement between the parties, and such as are implied. The latter are such as the law raises from the relation of the parties, in the absence of any agreement between them on the subject. The liability of the lessee, in respect to the latter, will be discharged by an assignment with the assent of the lessor, for thereby, the privity of estate, upon which it depends, is destroyed, and the implied covenant or agreement canceled. But the liability of the lessee, arising from express contract, is so permanently fixed during the whole term, that no act of his own can absolve him from the lessor's demands in respect to it. An assignment with the lessor's concurrence, and his subsequent receipt of rent from the assignee will be ineffectual for this purpose. The lessor, where there is an express agreement of the lessee, may sue, at his election, either the lessee or the assignee, or, may pursue his remedy against both at the same time,

though he can have, of course, but one satisfaction. *Mills* v. *Aurial,* 1 Smith's L. C. 913; *Thursby* v. *Plant,* 1 Wms. Saund. 241, note 5; Platt, Covenants, side pp. 490, 491, 494. But, though both are thus liable to the lessor, yet the ultimate liability, as between themselves, can not depend upon which of the two he may, from interest or caprice, elect to pursue to the satisfaction of his demand. The estate is the consideration which the lessor furnished for his demand for rent, and from which it was expected to issue. The privity of estate between the lessor and lessee, and upon which the personal liability of the latter was bottomed, having ceased, and by the assignment passed to the assignee, the latter, as between himself and the lessee, in the absence of any agreement, is to be regarded as primarily liable for the rent, and the personal liability of the lessee as collateral thereto. The lessee is liable in the nature of a surety for the assignee during the continuance of his interest, and, although not bound by an express promise, yet the law imposes a duty upon him to perform the covenants while he enjoys the estate. *Smith* v. *Peat,* 9 Exch. 161; Taylor, Land. and Ten., §448; *Main* v. *Feathers,* 21 Barb. 646; *Burnett* v. *Lynch,* 5 B. & C. 289, 8 Dow. & R. R. 368; *Humble* v. *Langston,* 7 Mees. & W. 530; *Wolveridge* v. *Stewart,* 1 C. & M. 659, 3 Moore & S. 569, 30 Eng. C. L. 316."

Of course, if there was an actual novation, the assignor would be discharged, but we do not think that the answer of said appellant makes out such a case. The agreement of appellee that the contract might be assigned was not made with her co-appellants, but with herself. After the consent was granted, she still continued to be the tenant, but even if this were not true, we do not think that the consent indorsed upon the lease shows an affirmative intent to release her. Counsel for said appellant plead a number of acts done by appellee, and conclude by alleging that it "accepted" her co-appellants as tenants instead of her. We

think that the theory of this answer is that the acts alleged worked a novation, and that the statement mentioned is in the nature of a legal deduction from the specific acts pleaded. The acts pleaded did not work a release, and we are, of course, bound to disregard the conclusion.

An analogous question was presented in *Frank* v. *Maguire,* 42 Pa. St. 77, 82, where it was said: "Then, were the affidavits sufficient? Taken together, they aver in substance that the rent for the first quarter was paid, that after the first quarter of the lease had expired, the premises were rented to other tenants, whom the plaintiff accepted as tenants in the place and stead of Albright, the lessee, and that they attorned to him. They also aver that before the expiration of the lease, the plaintiff accepted the keys and took possession of the demised premises. By the express terms of the lease the rent was payable quarterly. The affidavits doubtless show a defense against any claim for the rent of the first and last quarters. But the judgment was for the rent of the second and third quarters, and the question is, whether the averments are sufficient to prevent a recovery of that. It is surely not necessary to cite cases to prove that a tenant is bound by his express contract to pay rent, even after he has assigned the term with his landlord's assent, and though the landlord has accepted the assignee as his tenant, and received rent from him. A landlord may, indeed, accept a surrender even by parol, and if he does, the term is gone into the reversion and the rent ceases. *Greider's Appeal,* 5 Barr. 422, 425; *M'Kinney* v. *Reader,* 7 Watts 123. But is a surrender averred in this case? Not in terms, certainly, and not even inferentially, unless it be in the allegation that the plaintiff accepted and received De Grath & Co. as tenants in place and stead of John S. Albright, and that they attorned to him. But if he received from them rent reserved under the lease, or accepted them as tenants, it must have been in place and stead of the original lessee, and that would not

amount to a surrender of the term: *Dewey* v. *Dupuy,* 2 Watts & Serg. 553. If the defendant intended to aver that there was a surrender, it was easy to assert it, so as to leave no doubt. While his affidavits are to receive no strained construction against him, it is not unreasonable to require that he shall not leave in doubt what it was so easy to set at rest. All which is averred may have taken place, and yet there have been neither surrender nor release." There were facts shown on the trial that might, perhaps, have justified the conclusion that it was the intent to release said appellant Butsch; but they were not pleaded in her answer, and were therefore not in issue.

We have now considered the various questions presented by the demurrers and the motions for a new trial, and we find no error. The judgment of the trial court is affirmed.