Dixie B. STRECKFUS, Appellant (Plaintiff Below),

v.

GARDENSIDE TERRACE COOPERATIVE, INC., and Triangle Associates, Inc., Appellee (Defendants Below).

No. 10S01–8702–CV–244.

Supreme Court of Indiana.

Feb. 25, 1987.

William C. Moyer, Steven A. Gustafson, Lorch Moyer Gesenhues & Bitzegaio, New Albany, for appellant.

Sandra L. Heeke, Fox & Smith, Jeffersonville, for appellee.

ON CIVIL PETITION TO TRANSFER

DICKSON, Justice.

Plaintiff-petitioner Dixie B. Streckfus seeks review of an adverse decision from our Court of Appeals, First District, affirming a summary judgment entered in favor of defendant-respondents Gardenside Terrace Cooperative, Inc., ("Gardenside"), and Triangle Associates, Inc., ("Triangle"). *See, Streckfus v. Gardenside Terrace Co-op, Inc.* (1985), Ind.App., 481 N.E.2d 423.

Gardenside was the owner of a housing development consisting of approximately 230 units. Pursuant to agreement, Triangle functioned as Gardenside's agent in managing the development, including the hiring and discharging of employees on Gardenside's behalf. Plaintiff was hired by Triangle as Resident Manager of the housing development. The terms and conditions of plaintiff's employment were contained in a written agreement ("Employment Agreement") which provided in relevant part as follows:

> This Agreement, made and entered into this 29th day of October, 1979, by and between Triangle Associates, Inc., as managing agent for [Gardenside], has employed Mrs. Dixie Streckfus.
>
> \* \* \* \* \* \*
>
> I understand I am being hired by Triangle Associates, Inc., for employment with Gardenside Terrace. Triangle Associates has the sole control over my employment as per the management contract between Triangle Associates, Inc., and Gardenside Terrace. Gardenside Terrace is my employer and I am paid out of the funds of Gardenside Terrace.

Despite the reference in the Employment Agreement to a "management contract," the record does not contain a copy of any such agreement in effect at the time the Employment Agreement was executed. It is clear, however, that in August, 1980, Gardenside and Triangle entered into a Housing Management Agreement ("Management Agreement") which dictated their relationship for the period relevant to this case. This Management Agreement provided in relevant part as follows:

> The hiring and discharging of the Resident Manager ... will be subject to the Owner's [Gardenside's] approval. If the Resident Manager ... should have to be discharged for cause, the Agent [Triangle] will suspend said employee without pay, notify the board of directors [of Gardenside] of such suspension, and request that the board approve discharge of that employee within 48 hours of such notice. Upon proper proof that an employee is providing *unsatisfactory service*, the Board will not unreasonably withhold approval of such termination. [emphasis added]

Attached to the Management Agreement, and incorporated by reference therein, was a document entitled "Management Plan" which contained more detailed policies and procedures by which the parties agreed to abide. Among the provisions of the Management Plan were the following:

> I(C) The Agent is responsible for the day-to-day operations of the property. This would include ... the hiring and firing of all employees.... The Agent may make any decision which is consistent with the policies of the Owner and within the scope of sound management practices.
>
> \* \* \* \* \* \*
>
> II(D)(4) If an employee is terminated, the supervisor will explain to the employees the reasons for termination. If the terminated employee has pertinent information relating to his dismissal, then he may appeal the termination of the Board of Directors within three (3) days from

date of termination. The Board of Directors and an officer of Triangle Associates will meet with the employee and the final decision will be made by the reviewing parties whether or not to reinstate the terminated employee with the exception of the Resident Manager and maintenance superintendent.

II(D)(5) The dismissal or termination of the Maintenance Superintendent or Resident Manager shall be done with the prior approval of the Board of Directors in most cases. *Sufficient reason* for termination must be supplied to the Board for their review and decision. These reasons will be outlined in written warnings that have been delivered to the employee (copies of which will be supplied to the Board of Directors) and will allow sufficient time to correct their actions before asking for termination. There will be a maximum of three (3) written warnings prior to a request to the Board of Directors.

In the case of an immediate dismissal by Triangle Associates, Inc. for cause of either of these employees, the Board of Directors of Gardenside Terrace Cooperative, Inc. must review such action within the time specified in the management agreement, and as outlined in Section 4 above.

The employee shall be suspended without pay pending the Board's decision. [emphasis added]

In October, 1981, the property manager for Triangle, citing plaintiff's inability to get along with her co-workers and her lack of leadership skills, submitted a recommendation to Gardenside's board of directors that plaintiff be discharged from her employment. Triangle's recommendation was accompanied by copies of a prior written warning submitted to the plaintiff. On October 12, 1981, following consideration of the recommendation, the board unanimously agreed to discharge the plaintiff.

The plaintiff, contending that she was fired without just cause, sued Triangle and Gardenside for breach of the Employment Agreement. Defendants moved for summary judgment on the grounds that plaintiff was an employee at will, thus the employment relationship was terminable by either the employer or the employee at any time for any cause or for no cause at all. Plaintiff filed a cross motion for summary judgment arguing that the provisions in the Management Agreement were incorporated by reference into the Employment Agreement, and that those provisions converted the employment at will relationship to one requiring "just cause" for termination. Alternatively, plaintiff argued that she was a third party beneficiary of the Management Agreement requiring "sufficient reason" to terminate her employment. The trial court entered summary judgment in favor of the defendants.

Without addressing the question of whether the terms of the Employment Agreement actually required just cause as a predicate for plaintiff's discharge, the Court of Appeals affirmed the trial court and held that the alleged job security provision in the Employment Agreement would be unenforceable as a matter of law because there was an absence of adequate independent consideration for the asserted promise of permanent employment.

■ Under the employment at will doctrine, an employment contract of indefinite duration is presumptively terminable at the will of either party. *Mead Johnson and Co. v. Oppenheimer* (1984), Ind.App., 458 N.E.2d 668. Notwithstanding plaintiff's invitation, we decline to abandon this general rule.

■ Nevertheless, we are cognizant that the employment at will doctrine is a rule of contract construction, not a rule imposing substantive limitations on the formation of a contract. *Mead Johnson, supra* (dictum); *Martin v. Platt* (1979), 179 Ind.App. 688, 386 N.E.2d 1026. Therefore, should parties to an employment contract choose to include a job security provision in the contract, enforcement of such a provision would not necessarily conflict with the employment at will doctrine. The law concerning the adequacy of consideration and the necessity for mutuality of obligation in such situations is presently undergoing widespread review by numerous commenta-

tors and courts of other jurisdictions. *See generally*, 33 A.L.R.4th 120 (1984) and cases cited therein; Heshizer, *The Implied Contract Exception to At-Will Employment*, 35 Labor L.J. 131 (1984). Under the facts of the instant case, however, this issue is not directly presented. We grant transfer and find that, as a matter of law, the Employment Agreement did not contain any job security provision which altered the employment at will relationship, and thus it is presently inappropriate for us to address the questions concerning whether separate and independent consideration should continue to be a prerequisite to the enforceability of an express job security provision.

The language in the Employment Agreement describes Triangle's authority as encompassing sole control over plaintiff's employment "as per the management contract between Triangle Associates, Inc., and Gardenside Terrace." Assuming, *arguendo*, that this language caused the employment discharge provisions of the Management Agreement and Management Plan to be incorporated by reference into the Employment Agreement, it bestowed upon plaintiff, at most, the benefit of having Triangle's decision to discharge plaintiff be reviewable by Gardenside's board of directors.

The Management Plan generally provided for two methods by which Triangle could terminate the resident manager: 1) immediate dismissal by Triangle "for cause", subject to the employee's right to appeal to the Gardenside board; and 2) termination for "sufficient reason" upon prior approval of the Gardenside board and prior written warning. Under both methods of discharge, Gardenside's board retained the final authority to terminate or reinstate plaintiff's employment. Had Triangle terminated the employment relationship without Gardenside's approval or review, plaintiff may have arguably had a colorable claim. It is undisputed, however, that plaintiff was discharged from her employment following the Gardenside board's unanimous agreement to terminate.

Thus, plaintiff's claim for wrongful discharge necessarily depends upon whether the phrase "sufficient reason," as used here, was adequate to prevent plaintiff's at-will discharge. In the context of the Management Plan, these phrases served only to require Triangle to provide Gardenside's board with information upon which a decision could be made. We find that the term did not impose limitations upon Gardenside restricting its freedom to discharge plaintiff.

The trial court's grant of summary judgment in favor of the defendants was proper. The Court of Appeals decision is vacated, and the trial court's judgment is hereby affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and SHEPARD, JJ., concur.