**Thomas J. TACKET, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION DELCO REMY DIVISION, Defendant.**

**No. IP 89 162–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Feb. 26, 1993.

Frank B. Harshey, Merriman & Harshey, Indianapolis, IN, for plaintiff.

Herbert C. Snyder, Jr., Barnes & Thornburg, Fort Wayne, IN, for defendant.

ENTRY

BARKER, District Judge.

This matter is before the Court to address the defendant's motion for partial summary judgment. That motion is fully briefed, and based on a review of the parties' filings and the record, the motion for partial summary judgment is DENIED, in part.

## I. Background

Thomas J. Tacket sues his former employer, the Delco Remy division of General Mo-

tors, for wrongful discharge in breach of an employment contract. The facts of his case, as reported in *Tacket v. Delco Remy, Div. of General Motors Corp.*, 959 F.2d 650 (7th Cir.1992), are as follows:

> Mr. Tacket was hired by General Motors on January 6, 1971, and was employed by Delco Remy (a division of General Motors) for approximately sixteen years. During his time at General Motors, Mr. Tacket rose to the level of senior project engineer. Mr. Tacket was employed pursuant to a written employment contract. Under the terms of the contract, Mr. Tacket's employment was extended "from month to month only on a calendar month basis." R.7 Ex. A. While still employed by General Motors, Mr. Tacket filed a defamation suit against his employers. On February 20, 1987, the district court granted General Motors' motion for a directed verdict in the defamation suit; [1] and on March 6, 1987, General Motors fired Mr. Tacket. In a letter dated March 9, 1987, General Motors stated to Mr. Tacket that he had been discharged because Mr. Tacket's conduct had "caused him to lose the trust, confidence and respect of his superiors and peers. He had made claims against his management which they believe are groundless. In support of his claims, he made statements about his superiors and peers that management believes were untrue. These circumstances make continuation of his employment not in the best interest of him or the Corporation." R.7 Ex. B. At the time of his discharge, Mr.

Tacket was paid for five days of work in March and for twelve and one-half vacations days. Mr. Tacket's monthly salary at the time of his dismissal was $3,887.88. *Id.* at 651.

## II. Discussion

### A. Punitive Damages

The defendant moves for partial summary judgment on Tacket's claim for punitive damages on the basis that "[n]o public interest is involved in this case which would be served by the deterrent effect of punitive damages." [2] The defendant claims that "it will be difficult, if not impossible, for Tacket to show the existence of any public interest in whether employees are discharged from their employment in retaliation for suing their employers," citing *Morgan Drive Away, Inc. v. Brant*, 489 N.E.2d 933 (Ind.1986). In response, Tacket claims that awarding punitive damages would serve a strong public interest, that Indiana has a strong public policy interest in discouraging employers from terminating a worker in retaliation for that worker's exercise of a "state" right. Tacket explains that everyone in Indiana has a "remedy by due course of law" under the Indiana Constitution, and claims that although Indiana case law provides that only "statutorily conferred rights" may define public policy, he fails to see a reason to protect a state statutory right more than a state constitutional right.

When it comes to employment terminations, Indiana distinguishes between those who are employed "at will" and those who are employed pursuant to a contract for

---

**1.** After reversal and remand from the Seventh Circuit, trial was had on Tacket's defamation claim against General Motors. Tacket prevailed at trial and received an award of $100,000 in damages against General Motors. The award was reversed on appeal, on the grounds that Tacket had shown only psychological injury, not pecuniary damage as required by Indiana defamation law. *See Tacket v. Delco Remy, Div. of Gen. Motors Corp.*, 937 F.2d 1201, 1207 (7th Cir.1991).

**2.** The defendant also moves for partial summary judgment on the grounds that Tacket has failed to produce evidence of malice and has failed to present evidence inconsistent with the hypothesis that the defendant's actions were noniniquitous. Whether the defendant's actions were malicious

or fraudulent or of the type mandating punitive damages is a fact question not resolvable at this juncture. *Tacket v. Delco Remy, Div. of General Motors Corp.*, 959 F.2d at 645 ("Mr. Tacket's chances for recovering punitive damages appear slim ... [but] we cannot absolutely preclude that possibility [of recovering punitive damages] before the issues of compensatory damages and mitigation have been resolved."). Further, it is no longer required that a plaintiff seeking punitive damages show that there is evidence inconsistent with the hypothesis that the defendant's actions were noniniquitous. *Erie Insurance Co. v. Hickman*, 605 N.E.2d 161 (Ind.1992) ("Since our decision in *Bud Wolf* such additional evidence inconsistent with honest human error is not required.").

a definite period of time. *Tacket,* 959 F.2d at 652–53. An at will employee may be discharged for virtually any reason at any time,[3] *see McClanahan v. Remington Freight Lines, Inc.,* 517 N.E.2d 390, 392 (Ind.1988); *Streckfus v. Gardenside Terrace Coop., Inc.,* 504 N.E.2d 273, 275 (Ind.1987), but a contract employee "may not be discharged before the expiration of such term except for cause or by mutual agreement unless the right to do so is reserved in the contract." *Rochester Capital Leasing Corp. v. McCracken,* 156 Ind.App. 128, 295 N.E.2d 375, 378 (Ct.App.1973).

■ Punitive damages are generally not recoverable when an employer breaches an employment contract. *Lawyers Title Ins. Corp. v. Pokraka,* 595 N.E.2d 244 (Ind.1992). Until two weeks ago, punitive damages could be awarded in contract actions:

> "whenever the elements of fraud, malice, gross negligence or oppression mingle in the controversy, and it can be shown that the public interest will be served by the deterrent effect of the punitive damages."

*Bud Wolf Chevrolet, Inc. v. Robertson,* 519 N.E.2d 135, 136–37 (Ind.1988) (citing *Art Hill Ford, Inc. v. Callender,* 423 N.E.2d 601, 602 (Ind.1981)). In other words, under *Bud Wolf,* to award punitive damages, this Court would have to conclude that under the known circumstances, the defendant "subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences," that a serious wrong, "tortious in nature,"

has been committed, and that the public interest would be served by the deterrent effect of punitive damages. *Bud Wolf Chevrolet, Inc. v. Robertson,* 519 N.E.2d 135, 136–37 (Ind.1988).

■ Under Indiana law, broad statements establishing and defining public policy, or determinations regarding which of competing public policies should be given precedence, are left to the legislature. *Rice v. Grant County Board of Comrs.,* 472 N.E.2d 213, 215 (Ind.Ct.App.1984). Indiana courts have found that there is a public interest in protecting at will employees who have filed suit based on the exercise of a statutory right or who have refused to breach a statutorily imposed duty. *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973); *see* note three. On the other hand, the Indiana Supreme Court has held that when an employee [4] is fired in retaliation for filing a common law action, even if the right to bring that action was statutorily created, no public policy is implicated. *Morgan Drive Away,* 489 N.E.2d at 934, *Call v. Scott Brass, Inc.,* 553 N.E.2d 1225, fn. 5 (Ind.Ct.App.1990) (interpreting *Morgan Drive Away* ). Indiana has struck this balance in light of the competing public interests between preserving the "employment at will doctrine," *Morgan Drive Away, Inc. v. Brant,* 489 N.E.2d at 934, and protecting an employee who exercises a protected right, *id.,* or complies with a statutory duty. *McClanahan v. Remington Freight Lines, Inc.,* 517 N.E.2d 390 (Ind.1988).[5]

---

**3.** Indiana courts recognize two exceptions to the employment-at-will doctrine. At will employees cannot be discharged solely for exercising a statutorily conferred right (such as filing a workmen's compensation claim), *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973), or for refusing to breach a statutorily imposed duty. *McClanahan v. Remington Freight Lines, Inc.,* 517 N.E.2d 390, 393 (Ind. 1988).

**4.** The *Morgan Drive Away* court did not state whether it considered its plaintiff an at will employee or a contract employee. In finding that the plaintiff could not bring a retaliatory discharge cause of action, the court stated that, "The employment at will doctrine has steadfastly been recognized and enforced as the public policy of this state," but the Court also held that, "In the event [the plaintiff] is found to be an independent contractor, he may still be entitled to contract damages [for breaching the terms of the employment contract]." *Morgan Drive Away, Inc. v. Brant,* 489 N.E.2d at 934.

**5.** The Court notes that under the punitive damages/public policy framework of *Lawyers Title Ins. Corp. v. Pokraka* and *Bud Wolf Chevrolet, Inc. v. Robertson,* the relevant question here would not be whether there is a public policy that deserves and requires advancement in discouraging an employer from committing defamation or protecting an employee who files suit against his employer for defamation. Because this case is a breach of contract case, to wit, whether Tacket's filing of a defamation lawsuit constituted just cause for termination under the employment contract and not a retaliatory discharge action, the issue is whether there is a public policy to deter employers from maliciously breaching an employment contract.

A protracted public policy inquiry under *Lawyers Title Ins. Corp. v. Pokraka* and *Bud Wolf Chevrolet, Inc. v. Robertson* is no longer necessary, however. On February 11, 1993, the Indiana Supreme Court retreated from its previous position by holding that, in order to recover punitive damages for a breach of contract, evidence of tortious conduct, an independent tort, not merely "tort-like" conduct, is the prerequisite to an award of punitive damages. *Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975 (Ind.1993). Whether a plaintiff seeking punitive damages for a breach of contract demonstrates "tort-like" conduct and whether public policy interests would be served by an award of punitive damages are now irrelevant inquiries; to recover punitive damages, "the plaintiff must plead and prove the existence of an independent tort of the kind for which Indiana law recognizes that punitive damages may be awarded." *Id.* at 984.

> Opinions of this Court have consistently stated the general rule that punitive damages are not allowed in a breach of contract action. *Lawyers Title Ins. Corp. v. Pokraka* (1992), Ind., 595 N.E.2d 244, 250; *Bud Wolf Chevrolet, Inc. v. Robertson* (1988), Ind., 519 N.E.2d 135, 136; *Travelers Indem. Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, 362; *Art Hill Ford, Inc. v. Callender* (1981), Ind., 423 N.E.2d 601, 602; *F.D. Borkholder Co., Inc. v. Sandock* (1980), 274 Ind. 612, 616, 413 N.E.2d 567, 57– [sic]; *Hibschman Pontiac, Inc. v. Batchelor* (1977), 266 Ind. 310, 314, 362 N.E.2d 845, 847; *Vernon Fire & Casualty Ins. Co. v. Sharp* (1976), 264 Ind. 599, 607, 349 N.E.2d 173, 183. Such statements suggest that there are exceptions to this rule, but upon close examination of the opinions of this Court, we find that no exceptions have ever been applied. Today we hold that, in fact, no exception exists.

> \* \* \* \* \* \*

> A rule that requires establishment of an independent tort furthers the public interest in recognizing the existence of bona fide business disputes and separating them from breaches of contract achieved in a tortious manner.

> \* \* \* \* \* \*

> We hold that in order to recover punitive damages in a lawsuit founded upon a breach of contract, the plaintiff must plead and prove the existence of an independent tort of the kind for which Indiana law recognizes that punitive damages may be awarded.

*Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d at 981–84 (Ind.1993).

Accordingly, to recover punitive damages in a breach of contract case, the plaintiff must plead and prove the existence of an independent tort of the kind for which Indiana law recognizes that punitive damages may be awarded. In other words, Indiana no longer recognizes (if it ever did) an exception to the general rule that punitive damages are not allowed for a breach of contract.

■ Tacket has failed to plead an independent tort of the kind for which Indiana law recognizes that punitive damages may be awarded. Although it is not clear that Tacket can so frame his action, since, as mentioned in footnote six, Indiana does not recognize the tort of intentional infliction of emotional distress in the contract setting, the Court will allow Tacket twenty (20) days to amend his complaint to plead an independent tort of the kind for which Indiana law allows for the recovery of punitive damages, mindful, of course, of the requirements of Fed. R.Civ.P. 11. A failure to amend the complaint in such a manner will be deemed an admission that Tacket is not entitled to punitive damages in this action, and the Court will so rule.

### B. Emotional Distress Damages

The defendant also moves for partial summary judgment on the basis that emotional damages are not recoverable for a breach of contract. In response, Tacket claims that Indiana courts recognize an exception to the general rule when the conduct of the defendant was inspired by malice, the injury was intentional, and the conduct provoked an emotional disturbance, citing *Arlington State Bank v. Colvin*, 545 N.E.2d 572, 576–7 (Ind. Ct.App.1989) and *First National Bank v. Acra*, 462 N.E.2d 1345, 1350 (Ind.Ct.App. 1984).

■ In general, a plaintiff may recover compensatory damages for mental anguish

"only when the mental anguish is accompanied by, and results from, physical injury." *Arlington State Bank v. Colvin*, 545 N.E.2d at 576. Indiana courts recognize an exception to that rule: where a tort involves the intentional invasion of a legal right which by its very nature is likely to provoke an emotional disturbance, such as a tortious trespass, *Cullison v. Medley*, 570 N.E.2d 27 (Ind. 1991); where "the defendant by extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to the [plaintiff]," *Comfax Corp. v. North American Van Lines, Inc.*, 587 N.E.2d 118 (Ind.Ct.App. 1992); or where the conduct causing the injury was "inspired by fraud, malice, or like motives and the conduct was intentional." *Shuamber v. Henderson*, 579 N.E.2d 452 (Ind.1991); *Arlington State Bank v. Colvin*, 545 N.E.2d at 576–77.[6]

 Whether the defendant's conduct was intentional and inspired by malice or some other like motive is a disputed question of fact, one properly to be decided by the trier of fact. Because Tacket has presented sufficient evidence to support its claim that the defendant's actions were intentional and motivated by malice, *Tacket v. Delco Remy, Div. of General Motors Corp.*, 959 F.2d at 654, Tacket's claim · for emotional damages survives a motion for summary judgment on this basis.

### C. Preemption

 Finally, the defendant claims that Tacket's claim for emotional damages is preempted by Ind.Code § 22–3–2–6 of the Indiana Worker's Compensation System. Tacket claims, however, that Ind.Code § 22–3–2–6 does not preempt his claim for emotional damages because he suffered his men-

tal injuries not "by accident," but that the defendant intentionally caused his anguish.

Ind.Code § 22–3–2–6 provides:

Sec. 6. The rights and remedies granted to an employee subject to IC 22–3–2 through IC 22–3–6 on account of personal injury or death by accident shall exclude all other rights and remedies of such employee....

Ind.Code § 22–3–2–6 is the exclusive remedy for a worker's compensation claim. *Vantine v. Elkhart Brass Mfg. Co.*, 762 F.2d 511, 522 (7th Cir.1985). Indiana has made clear that Ind.Code § 22–3–2–6 excludes all rights and remedies of an employee (other than a worker's compensation claim) against his employer for personal injury when the following three statutory jurisdictional prerequisites are met:

A. personal injury or death by accident;

B. personal injury or death arising out of employment; and

C. personal injury or death arising in the course of employment.

*Evans v. Yankeetown Dock Corp.*, 491 N.E.2d at 973. Actions for employee injuries which do not meet each of these prerequisites are not excluded, and may be pursued in the courts. *Id.*

The phrase "by accident" has been defined by the Indiana Supreme Court as an "unexpected injury" in the eyes of the injured worker. *Evans v. Yankeetown Dock Corp.*, 491 N.E.2d 969 (Ind.1986). Citing an Indiana Court of Appeals decision with approval, the *Evans* court stated that:

"[t]he test as·to whether an injury is unexpected and so if received on a single occasion occurs 'by accident' is that the suffer-

---

**6.** The defendant's citations to *Mehling v. Dubois County Farm Bureau Coop. Assn.*, 601 N.E.2d 5 (Ind.Ct.App.1992) and *Comfax Corp. v. North American Van Lines, Inc.*, 587 N.E.2d 118 (Ind. Ct.App.1992) are somewhat misplaced, as those cases deal with whether Indiana recognizes the tort of intentional infliction of emotional distress in the contract setting (it does not) and whether the defendant proved its intentional infliction of emotional distress claim (he did not), respectively. Although *Comfax* stands for the proposition that "an economic loss is sufficiently serious in nature and the resulting emotional trauma is of a kind and extent normally expect to occur in a

reasonable person, warranting the imposition of liability," *Comfax* dealt with what type of emotional trauma is compensable in the context of negligent or intentional infliction of emotional distress, where the emotional injury must be "severe." *Comfax Corp. v. North American Van Lines, Inc.*, 587 N.E.2d at 127. *Arlington*, on the other hand, deals with a situation applicable to one at bar, where the plaintiff alleges that the defendant breached an agreement and that the conduct causing the breach and injury was intentional and inspired by fraud, malice, or other like motive. *Arlington State Bank v. Colvin*, 545 N.E.2d at 576–77.

er did not intend or expect that injury would on the particular occasion result from what he was doing."

*Id.* (citing *Inland Steel Co. v. Almodovar,* 172 Ind.App. 556, 361 N.E.2d 181, 187 (Ct.App. 1977); *accord Hensen v. Von Duprin, Inc.,* 507 N.E.2d 573, 575 (Ind.1987) ("'by accident' refers to an unexpected injury on a particular occasion rather than an unexpected event.").

Although Tacket does not contest that the mental injuries [7] he suffered from the employment termination would be considered "by accident" (as it is defined under the Worker's Compensation System), Indiana courts have carved out an exception to the rule that Ind.Code § 22–3–2–6 is the exclusive remedy for work related injuries—where the employer has intentionally injured the employee. *National Can Corp. v. Jovanovich,* 503 N.E.2d 1224, 1232 (Ind.Ct.App. 1987); *see Gordon v. Chrysler Motor Corp.,* 585 N.E.2d 1362, 1365 (Ind.Ct.App.1992) (recognizing exception); *but see Buford v. American Tel. & Tel. Co.,* 881 F.2d 432, 435 (7th Cir.1989) ("In *Evans v. Yankeetown,* 491 N.E.2d 969, 975 ([Ind.] 1986), the Indiana Supreme Court interpreted the term "by accident" to mean unexpected injury or death—a construction that does not exclude intentional torts. Thus, *Evans* does not support the notion that an intentional tort/nonintentional tort dichotomy exists under the Workmen's Compensation Act."); *see also Zabkowicz v. West Bend Co., Div. of Dart Industries, Inc.,* 789 F.2d 540 (7th Cir.1986) (court, citing *Beck v. Hamann,* 263 Wis. 131, 56 N.W.2d 837, 840 (1953), noted that Wisconsin courts define accident under Wisconsin's similar Worker's Compensation Act as "a fortuitous event, unexpected and unforeseen by the injured person, and that even though the injury were intentionally inflicted by another, if it was unforeseen and unexpected by the person injured, it constituted an accident within the meaning of the [WCA]."). To fall within this exception, the plaintiff must prove:

that the supervisory employee acted as the alter ego of the corporation or acted upon direct orders form those in control of the corporation, it must also be proven that

the employer had an actual intent to cause the harm complained of.

*National Can Corp. v. Jovanovich,* 503 N.E.2d at 1232–33.

Here, Tacket has alleged and come forward with evidence to establish that those individuals who terminated Tacket's employment did so on the defendant's behalf, acting as the defendant's alter ego, with the intent to cause Tacket's injuries. As such, reviewing the evidence in the light most favorable to the non-movant, Tacket's claim for emotional damages is not preempted by the Indiana Worker's Compensation System, *National Can Corp. v. Jovanovich,* 503 N.E.2d 1224, 1232 (Ind.Ct.App.1987), and his claim for emotional damages survives the defendant's motion for partial summary judgment.

*III. Conclusion*

Accordingly, the defendant's motion for partial summary judgment is DENIED. However, for the reasons discussed in section II., part A. of this order, the Court will allow Tacket twenty (20) days to amend his complaint to plead, if he can, and mindful of the requirements of Fed.R.Civ.P. 11, an independent tort of the kind for which Indiana law allows for the recovery of punitive damages. A failure to amend the complaint in such a manner will be deemed an admission that Tacket is not entitled to punitive damages in this action, and the Court will so rule.

It is so ORDERED.

---

7. A "personal injury," under Ind.Code § 22–3–2–6, is, among other things, a psychic or mental injury. *Hensen v. Von Duprin, Inc.,* 507 N.E.2d 573 (Ind.1987).