Lee ORR, Alfred Smith, and William R. Robinson, Appellant–Plaintiffs,

v.

WESTMINSTER VILLAGE NORTH, INC., Appellee–Defendant.

No. 49A02–9311–CV–634.

Court of Appeals of Indiana.

June 8, 1995.

Rehearing Denied July 24, 1995.

Briane M. House, Kightlinger & Gray, Indianapolis, for appellant.

Patrick D. Miller, Goodin & Kraege, Indianapolis, for appellee.

## OPINION

KIRSCH, Judge.

Lee Orr, Alfred Smith, and William Robinson appeal the adverse entry of summary judgment in their suit for wrongful discharge against Westminster Village North, Inc. Orr, Smith and Robinson (collectively, the Employees) raise the following consolidated and restated issues:

1. Whether Westminster's discharge of the Employees violated its employment contract with them?

2. Whether IC 22-6-3-1 creates an exception to the employment at will doctrine?

We reverse.

## FACTS AND PROCEDURAL HISTORY

The evidence most favorable to the nonmovant Employees shows that they were employed as hourly maintenance workers in Westminster's Department of Buildings and Grounds. Prior to hiring the Employees, Westminster adopted an employee handbook (the Handbook) which explained its employment policies. Included in those policies, according to the Employees, were: annual performance evaluations, provisions for job security and opportunity for advancement, a progressive discipline system, and a grievance procedure to challenge disciplinary action. When they were hired, the Employees were each given a copy of the Handbook and asked to sign a statement indicating that they had read the Handbook.

The Employees were discharged by Westminster on March 22, 1990, for being in an unauthorized area and for conduct endangering safety and life. The Employees filed suit against Westminster, alleging that their discharge was a breach of their employment contract with Westminster. Specifically, the Employees contended that the Handbook was a part of their employment contract with Westminster and, in its discharge of them, Westminster: breached the terms of the contract by failing to follow the discipline and grievance procedures of the Handbook, breached an implied covenant of fair dealing with the Employees, negligently investigated the incident which resulted in the Employees' discharge, and defamed the Employees. Alleging, *inter alia,* that the Employees were at will employees and, as such, could be discharged at any time without cause, Westminster moved for partial summary judgment.[1] The trial court granted Westminster's motion.

---

1. Summary judgment was neither requested nor entered upon the Employees' defamation claim, consequently that issue is not before us on appeal. The Employees have not provided us with argument or authority supporting their contentions in the trial court that Westminster breached an implied covenant of fair dealing with its employees or that Westminster negligently investigated the incident which resulted in the Employees' discharge. Any error as to the trial court's

## DISCUSSION AND DECISION

The purpose of summary judgment is to end litigation about which there can be no factual dispute and which may be determined as a matter of law. *Liberty Mut. Ins. Co. v. Metzler* (1992), Ind.App., 586 N.E.2d 897, 899, *trans. denied* (1993). In reviewing a grant of summary judgment, we apply the same standard as did the trial court in entering it. *Id.* at 900. That is, summary judgment shall be granted if the designated evidence shows that "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Ind.Trial Rule 56(C); *Wickey v. Sparks* (1994), Ind.App., 642 N.E.2d 262, 265, *trans. denied* (1995). A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on a dispositive issue. *Scott v. Bodor, Inc.* (1991), Ind.App., 571 N.E.2d 313, 318. Construing all facts and reasonable inferences against the moving party, we will affirm a summary judgment on any legal theory which is consistent with the designated evidence in the record.[2] *Wickey*, 642 N.E.2d at 265.

### Issue One: Were the Employees party to an employment contract which was breached by their discharge?

The Employees first contend that they were employees for a term and that their discharge was a breach of their contract for term employment. They fail, however, to identify any definite period or duration of employment established by their oral contract with Westminster, and nothing in the record supports their claim of term employment.

The relationship between an employer and employee is contractual and arises from an express or implied contract of employment. *Miller v. State* (1972), 153 Ind. App. 54, 61, 285 N.E.2d 843, 847. Like any other contract, an employment contract is the product of an agreement between the parties; this agreement may either be express, or implied by acts of the parties which unequivocally show that the parties intended to create an employment relationship. *See id.* It is in the public's best interest that the freedom of contract not be unnecessarily restricted. *Stampco Constr. Co. v. Guffey* (1991), Ind.App., 572 N.E.2d 510, 513. Consequently, persons of full age and competent understanding are generally free to include in a contract any terms they wish, so long as those terms do not offend the public policy of this state. *See University Casework Systems, Inc. v. Bahre* (1977), 172 Ind.App. 624, 630, 362 N.E.2d 155, 159, *trans. denied.*

Historically, Indiana has recognized two forms of employment: 1) employment for a definite term; and, 2) employment at will. *See Atkins v. Board of Sch. Comm'rs of Indianapolis* (S.D.Ind.1993), 830 F.Supp. 1169, 1181. A contract for term employment is created when the parties agree that employment shall continue for a fixed or ascertainable period. If no definite or ascertainable period of employment is agreed upon, the employment is at will, *Rice v. Grant County Bd. of Comm'rs* (1984), Ind.App., 472 N.E.2d 213, 214, *trans. denied* (1985), and is presumptively terminable at any time, without liability, at the election of either party. *See McClanahan v. Remington Freight Lines* (1988), Ind., 517 N.E.2d 390, 392. Because the Employees' contract with Westminster was for an indefinite period, they were not term employees. *See Rice*, 472 N.E.2d at 214.

entry of summary judgment on these claims is waived due to the Employees' failure to argue them on appeal. Ind.Appellate Rule 8.3(A)(7); *Captain & Co. v. Stenberg* (1987), Ind.App., 505 N.E.2d 88, 95, *trans. denied.*

2. The Employees sought and obtained extensions of time for filing their Response to Westminster's Motion for Summary Judgment, with the final extension expiring on July 1, 1993. The Employees' Response and their Designation of Evidence

supporting their response were not filed, however, until July 13, 1993, nearly two weeks late, and the Employees did not seek leave of court to file their belated Response and Designation. We must, therefore, review the trial court's ruling solely upon the basis of the evidence designated by Westminster. *See* Ind.Trial Rule 56(C); *Keating v. Burton* (1993), Ind.App., 617 N.E.2d 588, 591, *trans. denied.*

The Employees next argue that the Handbook, as part of their employment contract, modified their employment at will status by limiting Westminster's ability to discharge them. They claim that they could be discharged only for the offenses specified in the Handbook and, then, only pursuant to the grievance procedures delineated therein. Westminster replies that it is not bound by the policies contained in the Handbook and that the Employees remained at will employees, dischargeable without cause.

█ We begin with our supreme court's observation that the employment at will doctrine does not prevent the parties to an employment contract from including job security provisions in the contract. In *Streckfus v. Gardenside Terrace Co-op, Inc.* (1987), Ind., 504 N.E.2d 273, the court noted that:

> "[T]he employment at will doctrine is a rule of contract construction [and] not a rule imposing substantive limitations on the formation of a contract[,] [t]herefore, should parties to an employment contract choose to include a job security provision in the contract, enforcement of such a provision would not necessarily conflict with the employment at will doctrine."

*Id.*, 504 N.E.2d at 275 (citations omitted). As a rule of contract construction, therefore, the employment at will doctrine does not prevent job security provisions in handbooks or other employer policy statements from becoming part of at-will employment contracts, so long as the parties intended them to be part of the employment contract and so long as the contract is otherwise enforceable.

We have often discussed the requirement of consideration to support an employment contract in terms of reciprocal promises by the employer and the employee to be bound to the same term of employment. For example, in *Shaw v. S.S. Kresge Co.* (1975), 167 Ind.App. 1, 328 N.E.2d 775, we held:

> "Even assuming, *arguendo*, that the handbook relied upon by [the employee] constituted a part of the contract, in the absence of a promise on the part of the employer that the employment should continue for a period of time that is either definite or capable of determination, the employment relationship is terminable at the will of the

employer. There being no binding promise on the part of the employee that he would continue the employment, it must also be regarded as terminable at his discretion as well. For want of mutuality of obligation or consideration, such a contract would be unenforcible [sic] in respect of that which remains executory. See: 1A Corbin, Contracts, § 152 (1963). See also: 1 Corbin, Contracts, § 96 (1963); 3A Corbin, Contracts, § 683 (1960)."

*Id.*, 167 Ind.App. at 7, 328 N.E.2d at 779 (citation omitted). *See also Campbell v. Eli Lilly and Co.* (1980), Ind.App., 413 N.E.2d 1054, 1062, *trans. denied* 421 N.E.2d 1099 (1981).

█ As our supreme court explained long ago, however, it is consideration, and not mutuality binding the parties to reciprocal performance, which is the true requirement for contract formation. In *Jordan v. Indianapolis Water Co.* (1902), 159 Ind. 337, 346, 64 N.E. 680, 683, the court held that: "It is enough to give mutuality to a contract that is entire in its character, if there is a consideration, on both sides for its performance." *See also* 3 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts,* § 7:14, at 290 (4th ed. 1992) ("It is ... better ... to take the position, as the Restatement [of Contracts] (Second) does, that no requirement of mutuality of obligation exists so long as the requirement of consideration is met."). We conclude, therefore, that it is consideration, and not a mutual agreement to a definite term of employment, that determines whether job security provisions agreed upon by the parties are enforceable. Thus, an employment contract granting job security to an employee is not unenforceable merely because the employee has a nonreciprocal right to resign at will. *See Kostanzer v. State ex rel. Ramsey* (1933), 205 Ind. 536, 548–49, 187 N.E. 337, 342 ("[T]here is nothing in the law of contracts to prevent one party to a contract granting to the other the privilege of rescission or cancellation on terms not reserved to the former party").

In the past, we have refused to recognize an employee's services as sufficient consideration to support job security provisions in an

employment contract; instead, we required additional consideration to support a contract which limited the employer's ability to fire an employee except for cause.[3] *See Ohio Table Pad Co. of Ind. v. Hogan* (1981), Ind.App., 424 N.E.2d 144, 145–46. Our supreme court, however, by adopting Judge Conover's dissent in *Romack v. Public Service Co. of Ind.* (1986), Ind.App., 499 N.E.2d 768, *dissent adopted in part,* 511 N.E.2d 1024, 1025–26 (1987), has rejected additional consideration as a requirement to create enforceable indefinite term employment contracts. The court explained that:

> "[T]he general rule of additional consideration is a misconception. It is actually a rule of convenience to be applied if the parties' intent regarding the permanent nature of employment is not clear. If the parties' intention is clearly manifested[,] there is no requirement for 'additional consideration.'"

*Id.,* 499 N.E.2d at 777 (quoting *Martin v. Federal Life Ins. Co.* (1982), 109 Ill.App.3d 596, 602, 65 Ill.Dec. 143, 148, 440 N.E.2d 998, 1003). *See also Wior v. Anchor Indust., Inc.* (1994), Ind.App., 641 N.E.2d 1275, 1279.

▆ Accordingly, we must look to the employment contract to determine the parties' intent regarding permanent employment and not merely review the agreement for additional consideration. The presumption that an employment contract for an indefinite term is terminable at the will of any party to it may be rebutted by a showing that the parties agreed to limit the employer's right to discharge the employee and that the agreement was supported by consideration. *See Speckman v. City of Indianapolis* (1989), Ind., 540 N.E.2d 1189, 1190. Moreover, an agreement to limit the employer's right to discharge an employee may be enforceable even without consideration, if the employee has begun work in reliance upon that agreement.

▆ When a party to an agreement performs his part of the agreement in reliance upon the promises of the other party, the other party is bound by that performance. *Marksill Specialties, Inc. v. Barger* (1981), Ind.App., 428 N.E.2d 65, 69, *trans. denied* (1982). Such partially executed agreements are unilateral contracts. *See The Chicago and Atlantic Ry. v. Derkes* (1885), 103 Ind. 520, 523–24, 3 N.E. 239, 241. With respect to unilateral employment contracts, Professor Corbin has observed:

> "[I]f the employer made a promise, either express or implied, not only to pay for the service but also that the employment should continue for a period of time that is either definite or capable of being determined, that employment is not terminable by [the employer] 'at will' after the employee has begun or rendered some of the requested service or has given any other consideration (or has acted in reliance on the promise in such manner as to make applicable the rule in Restatement, Contracts, § 90). This is true even though the employee has made no return promise and has retained the power and legal privilege of terminating the employment 'at will.' *The employer's promise is supported by the service that has been begun or rendered or by the other executed consideration or action in reliance. There is a valid unilateral contract; there is an obligation although there is no 'mutuality of obligation.'* There are, indeed, cases holding otherwise, in the belief that 'both parties must be bound or neither one is bound,' that for a valid contract there must be 'mutuality of obligation' (or something called 'mutuality'), and that if a contract is terminable 'at will' by one party it is necessarily terminable 'at will' by the other party also. These decisions can be found in considerable number; but the decisions to the contrary are far better considered, both in justice and in theory."

---

**3.** Although we have applied this requirement to justify nonenforcement of contract terms which favor employees, we have not always applied it when to do so would void contract terms which favor employers. For example, in *Ackerman v. Kimball Int'l, Inc.* (1994), Ind.App., 634 N.E.2d 778, we held that the employer's promise to continue at will employment, while retaining the right to discharge the employee "at any time[,]" was valid consideration to support the employee's promise not to compete with the employer after his discharge. *Id.* at 781. *See also Leatherman v. Management Advisors, Inc.* (1983), Ind., 448 N.E.2d 1048, 1050.

1A Arthur L. Corbin, *A Comprehensive Treatise on the Working Rules of Contract Law,* § 152, at 14–17 (1963) (footnotes omitted; emphasis added). Here, if the Employees had begun or supplied some of the work provided for in their agreement with Westminster in reliance on Westminster's promises as found in the Handbook, then those promises are enforceable in spite of a lack of mutuality of consideration. *See Marksill,* 428 N.E.2d at 69. *See also Seco Chemicals, Inc. v. Stewart* (1976), 169 Ind.App. 624, 632, 349 N.E.2d 733, 738; *Tuthill Corp. v. Wolfe* (1983), Ind.App., 451 N.E.2d 72, 78.

With this in mind, we see no reason why Westminster and the Employees could not agree to include the Handbook as a term of their employment contract. As Judge Garrard observed:

> "[I]f an employer chooses to tell its at will employees that upon the completion of six months service they are entitled to a week's paid vacation, and the employees perform, then at the conclusion of the six months the employer may not with impunity change its mind and deny vacation benefits. I see no difference if the employer, instead, through its employee manual or statement of policies, states that beyond a certain probationary period employees will only be discharged for cause or that a first offense of a certain type will be punished by a reprimand. The employer may only alter such policies prospectively without incurring liability for its breach."

*Tri–City Comprehensive Community Mental Health Ctr. v. Franklin* (1986), Ind.App., 498 N.E.2d 1303, 1307 (Garrard, J. dissenting) (footnote omitted).

 To determine whether the Handbook constituted a part of the employment contract between the Employees and Westminster depends upon whether the Employees reasonably relied upon it as a term of their employment when they began work for Westminster. The Illinois Supreme Court, in *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.* (1987), 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314, has provided guidelines, which we now adopt, to make that determination:

> "First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer had been made.
>
> Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer.
>
> Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement."

*Id.,* 115 Ill.2d at 490, 106 Ill.Dec. at 12, 505 N.E.2d at 318.

 Although the trial court did not enter specific findings that the Employees were employees at will, Westminster's defense of the court's ruling is based upon the employment at will doctrine and we can see no other theory supporting that ruling which is consistent with the designated evidence. Because that evidence supports the Employees' contention that they either began work at Westminster or continued working there in reliance upon possible job security provisions found in the Handbook, a genuine issue of material fact is in dispute and the trial court's entry of summary judgment on the Employees' claim for breach of their employment contract with Westminster was inappropriate. Accordingly, we reverse the trial court's entry of summary judgment on that claim.

By our ruling, we are not expressing an opinion as to whether the Employees began or continued work in reliance upon the Handbook being a term of their employment contract with Westminster, or whether the Handbook contains job security provisions which were violated by Westminster's discharge of the Employees. Nor are we expressing an opinion as to whether the Employees timely requested review under the grievance procedures in the Handbook.

### Issue Two: Does IC 22–6–3–1 create an exception to the employment at will doctrine?

 Indiana recognizes two limited public policy exceptions to the employment at will doctrine: 1) at-will employees cannot be discharged solely for exercising a statutorily conferred right, such as filing workers' com-

pensation claims; and, 2) at-will employees cannot be discharged for refusing to breach a statutorily imposed duty. *See Tacket v. General Motors Corp.* (S.D.Ind.1993), 818 F.Supp. 1243, 1246 n. 3.

The first exception was recognized by our supreme court in *Frampton v. Central Ind. Gas Co.* (1973), 260 Ind. 249, 297 N.E.2d 425. There, an at-will employee charged that she had been discharged in retaliation for filing a worker's compensation claim against her employer. The court reviewed Indiana's Worker's Compensation Act and found that a discharge in retaliation for filing a claim contravened the State's public policy of shifting the economic burden for employment-connected injuries from employee to employer. In finding that the discharge was a prohibited attempt to relieve the employer of its burden under the Act, the court held that: "under ordinary circumstances, an employee at will may be discharged without cause[;] [h]owever, when an employee is discharged solely for exercising a statutorily conferred right[,] an exception to the general rule must be recognized." *Id.* at 253, 297 N.E.2d at 428. *See also Call v. Scott Brass, Inc.* (1990), Ind. App., 553 N.E.2d 1225, *trans. denied.*

Our supreme court announced the second public policy exception to the employment at will doctrine in *McClanahan,* 517 N.E.2d 390. The court there held that an employee who was fired for refusing to commit an illegal act for which he would be personally liable had a cause of action against his employer. *Id.* at 393–94. Again, the Court based its holding upon a specific and limited public policy:

> "No Indiana statute explicitly states that public policy is violated by committing an illegal act or requiring an employee to do so at the risk of his job. Nevertheless, the idea that individuals contravene public policy when they violate the law is so basic to our social and political order that a legislative pronouncement of that concept is hardly necessary."

*Id.* at 393.

In *McClanahan* the court acknowledged a reluctance to adopt a "generalized public policy exception to the doctrine of employment at will," and indicated that its holding was a

"separate but tightly defined exception to the employment at will doctrine. . . ." *Id.* at 393. *See also Morgan Drive Away, Inc. v. Brant* (1986), Ind., 489 N.E.2d 933, 934. This court has also expressed a reluctance to adopt additional public policy exceptions to the employment at will doctrine. *See Martin v. Platt* (1979), 179 Ind.App. 688, 692–93, 386 N.E.2d 1026, 1028; *Hamblen v. Danners, Inc.* (1985), Ind.App., 478 N.E.2d 926, 929.

▇▇▇ The Employees contend that this court should recognize a third public policy exception for violations of IC 22–6–3–1, which provides:

> "Whenever any employee of any person, firm, limited liability company, or corporation doing business in this state shall be discharged or voluntarily quits the service of such person, firm, limited liability company, or corporation, it shall be the duty of such person, firm, member or manager of the limited liability company, or the officer of the corporation having jurisdiction over such employee, upon written request of such employee, to issue such employee a letter, duly signed by such person, firm, member, manager, or officer, setting forth the nature and character of service rendered by such employee and the duration thereof, and truly stating *for what cause, if any, such employee has* quit or *been discharged* from such service; however, this section shall not apply to any person, firm, limited liability company, or corporation which does not require written recommendations or written applications showing qualifications or experience for employment."

(Emphasis added).

We first note that IC 22–6–3–1 provides that the employer shall truly state the cause, *if any,* for discharging an employee if the employee requests the cause for discharge. The qualification "if any" recognizes that an employer may discharge an employee for no reason and still comply with the statute. We cannot reconcile this statutory language with the Employees' claim that the statute constitutes a legislative declaration that our public policy requires an employer give an acceptable reason for discharging an employee, and

so conclude that the Employees' claim as to the legislature's declaration of public policy is in error.

Also, the key element in *Frampton* and *McClanahan* is their holding that the employer be subject to liability if its firing of an employee contravenes a well-defined public policy. In each case, the employer attempted to avoid liability for the firing by arguing that the employee had no right to continued employment, due to the employee's at-will status. If the court had allowed the employers to escape liability for such a firing, then in the future:

> "Employees faced with the choice of losing their jobs or committing an illegal act for which they might not be caught would feel pressure to break the law simply out of financial necessity. Employers, knowing the employees' susceptibility to such threats and the absence of civil retribution, would be prompted to present such an ultimatum."

*McClanahan*, 517 N.E.2d at 393.

Here, the Employees' claimed public policy violation was Westminster's failure to give each of them a statutorily-required letter stating the true reason for their discharge. Of necessity, such a violation could occur only after a discharge, and the discharge, therefore, is not used as a threat to coerce the employee to violate a public policy of the state or as retaliation for the employee's failure to do so. Consequently, creation of the additional public policy exception requested by the Employees would not prevent retaliatory firings, but would merely impose an additional penalty on employers for violating IC 22–6–3–1. If our legislature had wished to impose such an additional penalty, it would have done so.

The obvious harm the legislature sought to preclude through this statute is a blighting of the employee's future job-seeking caused by a false statement of cause for discharge. This harm is deterred by the criminal penalty for violation of this section, found at IC 22–6–3–2. The employee's remedy for violation of this section, if any such remedy exists, is a suit to compel the employer to provide a letter truly stating the cause for the employee's discharge, or a suit for damages if the employer gives the employee a letter which sets forth a false cause for discharging the employee and that letter prevents the employee from obtaining other employment.[4]

Reversed.

SHARPNACK, C.J., and RUCKER, J., concur.

---

4. Because we determine that IC 22–6–3–1 is not a public policy exception to the employment at will doctrine, we do not reach the issue of whether an employee lacks standing to enforce that section as the federal court held in *Hostettler v. Pioneer Hi–Bred Int'l, Inc.* (S.D.Ind.1985), 624 F.Supp. 169, 173.